84 F.3d 1226
 141 A.L.R. Fed. 713, 64 USLW 2718,
109 Ed. Law Rep. 1103
 Sherwin SEAMONS, Jane Seamons, individually, and as natural
parents of Brian Seamons, a minor, Plaintiffs-Appellants,
v.
Douglas SNOW, individually and in his capacity as the Coach
at Sky View High School, and agent of Sky View High School
and the Cache County School District; Myron Benson,
individually, and as Principal of Sky View High School, and
agent of Sky View High School and the Cache County School
District; Sky View High School; the Cache County School
District, Defendants-Appellees,
Now Legal Defense and Education Fund; American Civil
Liberties Union Women's Rights Project; Equal
Rights Advocates; National Women's Law
Center; Women's Legal Defense
Fund, Amici Curiae.
 No. 94-4236.
 United States Court of Appeals,
Tenth Circuit.
 May 8, 1996.
 
 Robert R. Wallace of Hanson, Epperson & Smith, P.C., Salt Lake City, Utah (David S. Doty, North Salt Lake, Utah, with him on the briefs), for Plaintiffs-Appellants.
 Carol Clawson, Office of the Attorney General, Salt Lake City, Utah (Jan C. Graham, Utah Attorney General, and Brent A. Burnett, Dan R. Larsen and Barbara E. Ochoa, Office of the Attorney General, on the briefs), for Defendants-Appellees.
 Julie Goldscheid, New York City, Deborah A. Ellis, Brooklyn, NY and Yolanda S. Wu, Boston, MA, of the NOW Legal Defense and Education Fund, on the brief for amici curiae.
 Before EBEL and McKAY, Circuit Judges, and COOK, Senior District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 On October 11, 1993, Plaintiff-Appellant Brian Seamons was tied unclothed to a horizontal towel bar with athletic tape by his Sky View High School football teammates in the boys' locker room. Brian Seamons and his parents, Sherwin and Jane Seamons, filed the instant action in the United States District Court for the District of Utah against Defendants-Appellees Douglas Snow (the football team coach), Myron Benson (the principal), and Lynn Nelson,[1] individually and as employees and officers of the Sky View High School and the Cache County School District. Sky View High School and the Cache County School District were also named as defendants. Plaintiffs' complaint included federal causes of action under 42 U.S.C. §§ 1983 and 1985, and Title IX (20 U.S.C. § 1681(a)). Plaintiffs sought injunctive relief as well as compensatory and punitive damages. The district court granted Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[2] This is an appeal from the Memorandum Decision and Judgment of the district court dismissing the case. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse in part, affirm in part and remand for proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 2
 On October 11, 1993, Brian Seamons was assaulted by five of his upper-class football teammates in the locker room at Sky View High School.[3] Brian was grabbed as he came out of the shower, forcibly restrained and bound to a towel rack with adhesive tape. Brian's genital area was also taped. After Brian was restrained, one of his teammates brought a girl that Brian had dated into the locker room to view him. All of this took place while other members of the team looked on.
 
 
 3
 Brian reported this incident to school administrators and other authorities, including the football coach, Douglas Snow (the "coach"), and the school principal, Myron Benson (the "principal"). The coach brought Brian before the football team, accused Brian of betraying the team by bringing the incident to the attention of the administration and others, and told Brian to apologize to the team. When Brian refused to apologize, the coach dismissed Brian from the team. The five individuals who assaulted Brian were permitted to play in the next football game. The school district responded to the whole incident by canceling the final game of the season, a state playoff game.
 
 
 4
 Brian alleges that he was subjected to a "hostile environment" because he was branded as the cause of the football team's demise, and that he was threatened and harassed. Eventually the principal suggested to Brian and his parents that Brian should leave the high school. Brian did so and enrolled in a distant county.
 
 
 5
 Brian does not complain of the original assault against him. However, he does allege that the Defendant's response to that assault was sexually discriminatory and harassing.[4] For example, Brian contends Defendants expected him to conform to a macho male stereotype, as evidenced by their suggestion to him that he "should have taken it like a man." In addition, the coach reportedly explained the incident by stating "boys will be boys," and characterizing the assault as "hazing," or consistent with "pranks" that are rites of passage on the football team.
 
 
 6
 Brian alleged the following bases for recovery in the district court: (1) Defendants Cache County School District and Sky View High School created and tolerated a hostile educational environment in violation of Title IX, 20 U.S.C. § 1681(a); (2) Defendants are liable under 42 U.S.C. § 1983 for violating Brian's constitutional rights to procedural due process, substantive due process, freedom of association, freedom of speech, familial association, and for violating Brian's right to equal education and equal protection; (3) Sky View High School and the School District had a policy of deliberate indifference to Brian's constitutional rights in violation of § 1983; (4) Sky View High School and the School District failed adequately to train their coaches, faculty and administrators in violation of 42 U.S.C. § 1983; and (5) Defendants conspired to violate Brian's constitutional rights in violation of 42 U.S.C. § 1985. In addition, Brian sought injunctive relief, attorney's fees under 42 U.S.C. § 1988(b), and punitive damages.
 
 
 7
 With respect to the claims under Title IX, the district court determined that a plaintiff must prove discriminatory intent, and that Brian failed, as a matter of law, to allege sufficient facts to support his claim that Defendants were motivated by an intent to discriminate against him on the basis of his sex. In addition, citing "important distinctions" between Titles VII and IX, the district court refused to apply the negligence based Hostile Environment/Sexual Harassment doctrine of Title VII to this case. The court stated that even if this doctrine did apply, Brian failed to set forth any factual allegations supporting a claim of sexual harassment.[5]
 
 
 8
 With respect to the § 1983 claims, the court held that Brian failed to demonstrate he was deprived of any constitutional right: (1) Brian's procedural due process rights were not violated because he was not dismissed from school without a hearing; rather, he left voluntarily; (2) Brian's substantive due process rights were not violated because he failed to demonstrate that Defendants intentionally deprived him of an interest in liberty or property protected by the Constitution; (3) Brian failed to allege any facts showing Defendants intended to deprive him of his right to freedom of group association; (4) Brian failed to allege facts in support of his claim that Defendants violated his or his parents' right to freedom of speech, and the coach's dismissal of Brian from the team for not apologizing was protected by qualified immunity; (5) Brian's claims to equal education and equal protection failed because he failed to show he was treated differently from other similarly situated students on the basis of a protected status; (6) Brian's right to familial association was not violated because there were no facts tending to show Defendants directed their conduct at an intimate relationship with knowledge that the conduct would adversely affect that relationship; and finally (7) Brian's claim based on Defendants' alleged failure to train was not supported by facts demonstrating "deliberate indifference" on the part of Defendants. Because Brian's § 1983 claims failed, the district court dismissed the claims for attorney's fees and punitive damages.
 
 
 9
 With respect to the § 1985 claim, the district court determined that Brian failed to allege facts supporting an inference that Defendants reached a "meeting of the minds" or that Defendants were "discriminatorily motivated" to deprive him of equal protection.
 
 
 10
 Finally, with regard to remedies, the district court found that Brian no longer had a "personal stake" in the outcome of the case because he no longer attends Sky View High School. Therefore, the district court dismissed the claim for injunctive relief. Based on the foregoing conclusions, the district court dismissed Brian's complaint in its entirety. He now appeals the district court's disposition of his Title IX claim, his procedural and substantive due process claims, his First Amendment freedom of speech claim, and his claim for injunctive relief. Brian also appeals the district court's conclusion with respect to Defendants' entitlement to qualified immunity.[6]
 
 II. DISCUSSION
 
 11
 We review an order granting a motion to dismiss for failure to state a claim de novo. Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1551 (10th Cir.1992). Dismissal is inappropriate under Fed.R.Civ.P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief. Id. The court must accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in plaintiff's favor. Arnold v. McClain, 926 F.2d 963, 965 (10th Cir.1991); Freeman v. Department of Corrections, 949 F.2d 360, 361 (10th Cir.1991).
 
 TITLE IX
 
 12
 Title IX prohibits educational institutions that receive federal assistance from discriminating on the basis of sex. 20 U.S.C. § 1681(a) (1990). Title IX states:
 
 
 13
 No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance....
 
 
 14
 Id. To state a cause of action under Title IX, a plaintiff must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex. Bougher v. University of Pittsburgh, 713 F.Supp. 139, 143-44 (W.D.Pa.), aff'd, 882 F.2d 74 (3d Cir.1989).
 
 
 15
 There is no dispute that qualifying educational programs were involved here. However, the question is whether Brian has alleged that he was excluded from such programs on the basis of sex. Brian alleges that Cache County School District and Sky View High School created and tolerated a hostile educational environment because: (1) the District failed to adopt and publish Title IX grievance procedures and to designate a Title IX coordinator; (2) the District knew or should have known of prior incidents of sexual harassment at Sky View High School; and (3) the District and the High School failed properly to investigate the taping incident and to take disciplinary action against the students involved, creating a hostile educational environment. Brian argues that these acts and/or omissions were "on the basis of sex" because of the masculine stereotypes imposed on him when the coach stated that this conduct amounted to nothing more than "hazing" which Brian should have taken "like a man," and when the conduct was trivialized by saying "boys will be boys."
 
 
 16
 However, there is an important difference between (1) a "hostile" environment created primarily by a student body which disapproved of Brian's response to his assault and which, rightly or wrongly, attributed responsibility to Brian for the cancellation of the school's post-season football game, and (2) a sexually charged hostile environment cognizable as sexual harassment. The elements Brian must prove to succeed on a claim of sexual harassment are: (1) that he is a member of a protected group; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on sex; (4) that the sexual harassment was sufficiently severe or pervasive so as unreasonably to alter the conditions of his education and create an abusive educational environment; and (5) that some basis for institutional liability has been established. Davis v. Monroe County Bd. of Educ., 74 F.3d 1186, 1194 (11th Cir.1996).
 
 
 17
 Assumed as true, the facts alleged in the complaint, together with all reasonable inferences therefrom, fail to satisfy the third element listed above.[7] Brian has failed to allege facts sufficient to indicate that the conduct being challenged (which it must be remembered, post dates the locker room assault) was "sexual" in nature, as defined in the hostile environment context. Brian fails to allege any facts that would suggest he was subjected to unwelcome sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him.
 
 
 18
 Brian points to comments made by school officials such as "boys will be boys" and "he should take it like a man" to support his argument that he was subjected to a sexually hostile school environment. These statements, however, fall short of showing sex discrimination. The qualities Defendants were promoting, team loyalty and toughness, are not uniquely male. The fact that the coach, and perhaps others, described these qualities as they pertain to his situation in terms of the masculine gender does not convert this into sexual harassment. Brian has not alleged that Defendants would have acted differently if a similar event had occurred in the women's athletic program. To the contrary, Brian's complaint alleges that such hazing has also occurred to women at Sky View High School and that it has similarly gone unaddressed by school officials. Aplt.App. at 18, 22. Furthermore, Brian's claim that the school district discriminated based on sex because it failed to provide Title IX grievance procedures to the students is insufficient to state a claim here because the school district's alleged failure to adopt Title IX's grievance policy and procedures was not itself an act of discrimination based on sex.
 
 
 19
 The facts as alleged tend to show only that Brain was treated as he was because others felt he "betrayed" the team by reporting the incident to the relevant authorities and by failing to apologize. Brian's complaint itself states that he was dismissed from the team for refusing to apologize to his teammates. We recognize that the hostility of the school environment may have increased after the school board sought to punish the perpetrators and to show its disapproval of the hazing incident by canceling the play-off game. However, again, this cannot be viewed as an attempt by these Defendants to exacerbate or create a hostile sexual environment for Brian. Because Brian has failed to allege facts sufficient to show that the actions or inaction of school officials in response to the conduct was based on his sex, we conclude that he has not stated a claim under Title IX.
 
 SECTION 1983 CLAIMS
 A. Preemption
 
 20
 Defendants initially contend that Brian's § 1983 causes of action are precluded by the existence of comprehensive remedies available under Title IX. See Middlesex County Sewerage Auth. v. National Sea Clammers Assoc., 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."). The Sixth Circuit in Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 722-24 (6th Cir.1996), held that § 1983 claims are not supplanted by the private right of action under Title IX. The court concluded that, in contrast to National Sea Clammers where "allowing the section 1983 action to enforce the rights at issue would have effectively circumvented the implicit congressional intention to foreclose private rights of action" (under the Federal Water Pollution Control Act and the Marine Protection Research, and Sanctuaries Act), Title IX plaintiffs who bring a § 1983 action predicated on constitutional provisions do not circumvent Title IX procedures or gain access to remedies not available under Title IX. Id. at 723. The National Sea Clammers doctrine "speaks only to whether federal statutory rights can be enforced both through the statute itself and through section 1983"; it does not "stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim." Id. (emphasis in original). The Sixth Circuit also noted that the private right of action under Title IX is "implied," and that the only enforcement mechanism expressly provided for under the statute was a procedure for the termination of federal financial support for institutions violating Title IX. Id. (citing Cannon v. University of Chicago, 441 U.S. 677, 683, 99 S.Ct. 1946, 1950-51, 60 L.Ed.2d 560 (1979)). Based on this observation, the court concluded that Title IX does not have a "comprehensive enforcement scheme," and thus, there is no indication in Title IX that Congress intended to foreclose a Title IX plaintiff from bringing a § 1983 action. Id.; but see Pfeiffer v. Marion Center Area Sch. Dist., 917 F.2d 779, 789 (3d Cir.1990) (affirming the lower court's conclusion that plaintiff's constitutional claims were "subsumed" by Title IX and otherwise barred by the National Sea Clammers doctrine); Mabry v. State Bd. for Community Colleges and Occupational Educ., 597 F.Supp. 1235, 1239 (D.Colo.1984), aff'd on other grounds, 813 F.2d 311 (10th Cir.), cert. denied, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). We agree with the Sixth Circuit, and conclude that Brian's § 1983 action is not barred by Title IX.[8]
 
 B. Procedural Due Process
 
 21
 A plaintiff must allege a deprivation of a sufficient property or liberty interest to invoke the protection of the Due Process Clause of the Fifth Amendment. Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If a sufficient property interest is found, the government cannot deprive an individual of that interest without due process. Gillihan v. Shillinger, 872 F.2d 935, 939 (10th Cir.1989). Due process ordinarily "requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Miller v. Campbell County, 945 F.2d 348, 353 (10th Cir.1991) (quotation omitted), cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).
 
 
 22
 Brian claims that he had constitutionally protected property interests (1) in his education at Sky View High School, (2) the advanced placement courses and credits, and (3) participation in interscholastic athletics. He also claims he had constitutionally protected liberty interests in: (1) attending public school in the district where he resides; (2) bodily integrity, which includes the right to be free from sexual assault and harassment at school; (3) living with his family and not being forced to attend school in a district far removed from his family; (4) not being dismissed from the Sky View football team; and (5) his reputation and standing in the community.
 
 
 23
 We assume, based on Utah law, that Brian has a constitutionally protected interest in receiving public education. See Goss v. Lopez, 419 U.S. 565, 573, 95 S.Ct. 729, 735-36, 42 L.Ed.2d 725 (1975) (applying Ohio law). However, the "Supreme Court has stressed that '[h]istorically, th[e] guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.' " Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986) (emphasis and alterations in original)). The word "deprive" in the Due Process Clause indicates that something more than mere negligence is required to trigger the protections of the Clause. Daniels, 474 U.S. at 330, 106 S.Ct. at 664; see also Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) ("[T]he protections of the Due Process Clause, whether procedural or substantive, are ... not triggered by lack of due care...."). We have held that there must be an "element of deliberateness in directing the misconduct toward the plaintiff before the Due Process Clause is implicated." Archuleta, 897 F.2d at 498. Brian's complaint stops short of alleging school district officials took any deliberate action to remove him from school. In fact, the complaint alleges that the decision to transfer to another school was made by Brian and his parents.
 
 
 24
 With regard to the specific components of education which Brian claims were lost (e.g., the right to participate in sports, to take advanced placement classes, and to attend a particular school), we do not believe that Brian has a constitutional right to those particular incidents of education. We have interpreted Goss to speak only in general terms regarding the "educational process." Albach v. Odle, 531 F.2d 983, 985 (10th Cir.1976). In Albach we explained that the innumerable separate components of the educational process, such as participation in athletics and membership in school clubs, do not create a property interest subject to constitutional protection. Id. Furthermore, to the extent Brian was deprived of his reputation or standing in the community as a result of Defendant's conduct, he still fails to state a procedural due process claim. The Supreme Court, in Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976), concluded that damage to an individual's reputation alone, apart from some more tangible interest, is not enough to establish a due process violation. See also Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1268-69 (10th Cir.1989). Brian has failed to allege a protectible property or liberty interest under the Due Process Clause.
 
 C. Substantive Due Process
 
 25
 In support of his substantive due process claim, Brian cites a Fifth Circuit case which held that school children have a liberty interest in their bodily integrity and that school district and school officials can be held liable for omissions which manifest a deliberate indifference to the constitutional rights of a student. Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 445 (5th Cir.), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). Doe, however, involved a male teacher who had notoriously sexually molested female students and had repeated sexual intercourse with at least one of the students. State action was not at issue and the plaintiff's liberty rights were clear. The facts involving Brian are very different. In this case, fellow students were perpetrators of the underlying assault. That incident escalated, in part, because of the Defendants' methods of attempting to remedy the problem. As noted before, Brian has stipulated that he does not seek to hold Defendants liable for the actual locker room incident. He alleges, however, that Defendants violated his rights by failing to investigate the incident, failing to discipline the perpetrators, failing to adopt or follow procedures designed to protect his property and liberty interests, and forcing him off the football team.
 
 
 26
 Again, although Brian was removed from the football team, he has no constitutionally protected property interest in participating in the school's athletic program. Albach, 531 F.2d at 985. Most of the remaining substantive due process claims revolve around the School District's failure to protect Brian from the taunting and hostility of his fellow students. However, those concerns fail to satisfy the state action component required under the Due Process Clause.
 
 
 27
 [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.... [By] its language [the Due Process Clause] cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.
 
 
 28
 DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197, 109 S.Ct. at 1004.
 
 
 29
 We have applied this principle in the context of a claim that a school district had a duty to protect a student from his fellow students. In Graham v. Independent Sch. Dist. No. I-89, 22 F.3d 991, 994-95 (10th Cir.1994), we held that schools have no duty under the Due Process Clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented. If the state takes a person into custody or holds him against his will, the state assumes some measure of a constitutionally mandated duty of protection. Id. at 994. Compulsory attendance laws for public schools, however, do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school. Id. (citing Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir.1992), cert. denied, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993)). Inaction by the state, in the face of a known danger, is not enough to trigger a constitutional duty to protect unless the state has a custodial or other "special relationship" with the victim. See Graham, 22 F.3d at 995. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament ... but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney, 489 U.S. at 200, 109 S.Ct. at 1005-06. The school district in this case did not limit Brian's freedom to act on his own behalf, and therefore, no special relationship arose triggering a constitutional obligation to protect Brian from other students.
 
 
 30
 In addition to the "special relationship" doctrine, we have held that state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm. Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir.1995), cert. denied, 516 U.S. 1118, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). However, we stated that a claim brought under the "danger creation" theory must be predicated on "reckless or intentional injury-causing state action which 'shocks the conscience.' " Id. " '[I]t is not enough to show that the state increased the danger of harm from third persons; the [ § ] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff.' " Id. at 573 (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 531 (5th Cir.1994) (second alteration in original)). "That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. at 574.
 
 
 31
 Brian has failed to allege facts to support that Defendants acted with an intent to harm him. In fact, the complaint alleges that school officials attempted to punish the football team for the assault on Brian by canceling the remaining game of the season. The complaint further indicates that Brian received a written apology from the team concerning the incident. Whether or not these efforts amounted to the correct response, they reflect that Defendants did not intend to harm Brian or unreasonably to place him at risk of harm. The complaint, at most, alleges that Defendants were negligent or that they made poor choices in dealing with Brian's predicament. However, "[t]he Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (quotation omitted). Furthermore, Defendants' conduct does not "shock the conscience," as we have come to understand the term. The "shock the conscience" standard requires a high level of outrageousness, Uhlrig, 64 F.3d at 574, which simply is not present here.
 
 D. Freedom of Speech
 
 32
 The government may not "deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interest in freedom of speech"--even though the person has no right to the valuable governmental benefit and "even though the government may deny him the benefit for any number of reasons." Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (holding that lack of a contractual "right" to tenure is immaterial when the decision not to renew a teaching contract is based on the teacher's exercise of his right of free speech). Brian and his parents assert that Defendants violated their First Amendment right to freedom of speech by discouraging them from making statements to the press about the incident, and by removing Brian from the football team because he refused to apologize for informing authorities of the incident. The district court disposed of this issue by holding that merely discouraging another from speaking out on an issue does not constitute a First Amendment violation and, in any event, Defendants were protected by qualified immunity.
 
 
 33
 We agree with the dismissal of the First Amendment claims of Sherwin and Jane Seamons individually because the only conduct of the defendants that was directed at them individually were discussions (ultimately unsuccessful) to persuade them not to speak out publicly about the incident together with statements by the defendants pursuant to their own First Amendment rights that Sherwin and Jane Seamons perceived as hostile to them or their position. The essence of the First Amendment is to allow all parties the opportunity for attempts to persuade as well as the opportunity for robust, even hostile, exchanges of conflicting views. We see no allegations against these defendants that violates any of the individually held First Amendment rights of Sherwin or Jane Seamons.
 
 
 34
 With regard to Brian, it appears he was denied a benefit (participation on the football team) because of his decision to tell his parents and school officials about the incident in the locker room. Brian's actions certainly constitute speech; the question is whether this "speech" is entitled to First Amendment protection. In situations such as this, which do not involve "school-sponsored expressive activities," see Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988), the school district's ability to restrict a student's speech requires a showing that such speech would "substantially interfere with the work of the school or impinge upon the rights of other students." Tinker v. Des Moines School Dist., 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969). It is well established that students in the public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Id. at 506, 89 S.Ct. at 736 (holding that "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students"). In Tinker, the Supreme Court set forth the relevant analytical framework for addressing the question of how to accommodate First Amendment rights in the school environment: A student's personal expression may be restricted where the forbidden conduct "in class or out of it, which for any reason--whether it stems from time, place, or type of behavior--materially disrupts classwork or involves substantial disorder or invasion of the rights of others...." Id. at 513, 89 S.Ct. at 740 (holding that the Des Moines School District could not punish high-school and junior high-school students for wearing black arm bands to school in protest of the Vietnam war where the students merely caused discussion outside the classrooms and neither interrupted school activities nor sought to intrude in the school's affairs or the lives of others). However, "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression," id. at 508, 89 S.Ct. at 737, and the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" cannot justify the prohibition by school officials of a particular expression of opinion, id. at 509, 89 S.Ct. at 737-38. "Thus, if the speech involved is not fairly considered part of the school curriculum or school-sponsored activities, then it may only be regulated if it would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.' " Roberts v. Madigan, 921 F.2d 1047, 1057 (10th Cir.1990) (quoting Tinker, 393 U.S. at 509, 89 S.Ct. at 737-38), cert. denied, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992); see also Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 270-71, 108 S.Ct. 562, 569-70, 98 L.Ed.2d 592 (1988) (holding that Tinker applies to situations where an educator attempts to silence a student's personal expression, but that educators are entitled to exercise greater control over expressive activity which bears the imprimatur of state sponsorship (e.g., school-sponsored publications or theater productions) in order to "assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school").
 
 
 35
 Applying these guiding principles to the case before us, we conclude that Brian properly states a claim that his speech is entitled to First Amendment protection. The complaint indicates that Brian's speech was responsibly tailored to the audience of school administrators, coaches, family and participants who needed to know about the incident. Brian's behavior neither disrupted classwork nor invaded the rights of other students. His speech was not part of a school-sponsored expressive activity such that listeners might believe that Brian's speech had the imprimatur of school sponsorship. We simply see no overriding school interest in denying Brian the ability to report physical assaults in the locker room. At most, the school's interest here was based on its fear of a disturbance stemming from the disapproval associated with Brian's unpopular viewpoint regarding hazing in the school's locker rooms. Under Tinker, that is not a sufficient justification to punish Brian's speech in these circumstances.
 
 
 36
 The district court did not make a determination as to whether Brian's speech was protected by the First Amendment. It simply foreclosed the issue by holding that Defendants were protected by qualified immunity because the officials involved did not "know or reasonably should have known that the action [they] took within [their] sphere of official responsibility would violate [Brian's] constitutional rights...." Seamons v. Snow, 864 F.Supp. 1111, 1121 (D.Utah 1994). Based on our reading of the complaint, resolving all reasonable inferences in Brian's favor, we conclude that the district court was premature in granting qualified immunity to Defendants.
 
 
 37
 The doctrine of qualified immunity generally shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In Chapman v. Nichols, 989 F.2d 393, 397 (10th Cir.1993), we stated that "a reasonably competent public official should know the law governing his conduct." A "precise factual correlation between the then-existing law and the case at-hand is not required." Patrick v. Miller, 953 F.2d 1240, 1249 (10th Cir.1992) (quotation omitted). The law is clearly established, "when it is well developed enough to inform the reasonable official that his conduct violates that law." Id. In determining whether the law involved was clearly established, we examine the law as it was at the time of the Defendants' actions. Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991). "[T]he plaintiff need not show that the specific action at issue has previously been held unlawful," he need only show that the alleged unlawfulness was apparent in light of preexisting law. Id. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). Considering these principles, we conclude that the complaint in this case properly states a claim, and that it is premature, absent a factual record, to grant qualified immunity on the basis of these pleadings.
 
 
 38
 In light of the well established principle that the government may not deny a benefit to a person because of his constitutionally protected interests, Perry, 408 U.S. at 597, 92 S.Ct. at 2697-98, and the well established framework of the Tinker analysis, we cannot say at this point that Defendants are entitled to qualified immunity. Resolving all reasonable inferences in Brian's favor, the complaint states a claim that Defendants violated clearly established law when Brian was dismissed from the football team because of his speech. However, this does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judgement should Brian's allegations in the complaint prove to be unfounded. Cf. Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (holding that a defendant's immediate appeal of an unfavorable qualified immunity determination on a motion to dismiss does not deprive the court of appeals of jurisdiction over a second appeal, also based on qualified immunity, following denial of defendant's motion for summary judgment). Based on our review of the complaint in this case, we conclude that the district court erred in its determination that Defendants are entitled to qualified immunity on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[9]
 
 INJUNCTIVE RELIEF
 
 39
 Injunctive relief is not appropriate in this case. The district court properly determined that Brian no longer has a personal stake in the outcome of the case because he no longer attends Sky View High School. Brian, however, argues that as long as the "hostile environment" persists at Sky View High, he is precluded from attending school there. He contends he wants the court to "correct the hostile educational environment that exists within the high school and the District." Furthermore, Brian contends that his younger siblings attend schools within the Cache County School District, and thus, they have a stake in the outcome of the case.
 
 
 40
 The Supreme Court, in Rizzo v. Goode, 423 U.S. 362, 372-73, 96 S.Ct. 598, 604-05, 46 L.Ed.2d 561 (1976), held that those seeking injunctive relief must have a personal stake in the outcome. "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (internal quotation marks omitted).
 
 
 41
 Brian has remedied the immediate problem by leaving the school. The question whether he would be subject to any hostility upon returning to Sky View High School calls for speculation and conjecture. Indeed, the record suggests Brian may already have graduated from high school. In any event, Brian does not allege in the complaint that he wants to return to the school. As for Brian's younger siblings, Brian cannot assert their rights. Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (holding that the plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). In any event, the incident complained of appears to have been specifically oriented to Brian and there is nothing in the complaint to suggest that Brian's younger siblings would suffer any constitutional deprivations if they were to attend Sky View High School. Therefore, we conclude that Brian is not entitled to injunctive relief in this action.
 
 III. CONCLUSION
 
 42
 Based on the forgoing discussion, we AFFIRM the district court's dismissal of all claims, with the exception of Brian Seamons' First Amendment freedom of speech claim against all defendants. We REVERSE the district court's order dismissing Brian Seamons' First Amendment freedom of speech claim, and REMAND for further proceedings consistent with this opinion.[10]
 
 McKAY, Circuit Judge, concurring:
 
 43
 I concur in the court's opinion except as to the Title IX claim. As to that claim, I concur in the result.
 
 
 44
 I write separately to express my disagreement with the court's analysis of Plaintiff's Title IX claim. I cannot agree that the alleged harassment in this case was not based on sex within the meaning of Title IX. The majority writes that statements such as "boys will be boys" and "take it like a man" are not sufficiently sex related to state a claim. I believe, however, that these statements can only be understood as a response to the original hazing incident. In my view, this incident was clearly sexual in nature. Members of the football team taped Plaintiff to a towel rack while he was naked, taped his genitals, and then displayed their captive to a girl Plaintiff had dated. These actions clearly derive their power to embarrass and to intimidate from their sexual and sex-based nature. It is hard for me to believe that the display of the male genitalia to a female for other than medical or educational reasons has a non-sexual connotation. The coach's statement that "boys will be boys" clearly relates to and flows out of the original sexual harassment. As such, it may be considered to be a continuation by the school official of the student-initiated sexual harassment, even if the statement by itself is not sexual in nature. See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir.1987) (Title VII sexual harassment claim does not require sexual advances or other sexual conduct; rather, conduct which "would not occur but for the sex of the employee" violates Title VII). Thus, although I concur in the result for other reasons, I cannot wholeheartedly accept the court's reasoning on this one issue.
 
 
 
 *
 Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 Lynn Nelson was dismissed from this action, without prejudice, by stipulation of the Plaintiffs
 
 
 [2]
 Plaintiffs had also stated their intent to raise various pendent state law claims. The proposed state law claims, however, were dismissed without prejudice and are not the subject of this appeal. Plaintiffs' federal causes of action were dismissed with prejudice
 
 
 [3]
 Because this case was decided on a motion to dismiss, for purposes of our review we accept as true the factual allegations in the complaint. Arnold v. McClain, 926 F.2d 963, 965 (10th Cir.1991)
 
 
 [4]
 In Plaintiffs' response to Defendants' Motion to Dismiss in the district court, Plaintiffs characterize the "crux" of their complaint as follows:
 [N]owhere in the Complaint do plaintiffs allege or argue that the defendants should have protected Brian from the initial assault by members of the football team .... the crux [of the Complaint] is what District personnel affirmatively did and failed to do thereafter.
 Doc. 24 at xv, Aplt.App. at 86.
 
 
 [5]
 The district court concluded that Plaintiffs Jane and Sherwin Seamons did not have standing as individuals to assert a claim under Title IX. The court also concluded that Title IX does not provide a cause of action against individual defendants such as Snow and Benson. Further, the court concluded that Sky View High School was not subject to suit under Title IX because under state law it did not have a corporate existence separate from the Cache County School District. None of these district court rulings have been appealed. Thus, we express no opinion with respect to them in this opinion
 
 
 [6]
 While the district court concluded that Jane and Sherwin Seamons did not have standing to pursue their Title IX claims in their individual capacities, the court did not make such a determination with respect to their other claims. However, we need not address this standing issue on appeal because we address the claims on the merits with respect to Brian, and make no distinction between Brian and his parents in doing so. With respect to the First Amendment freedom of speech claim, we do not believe that Jane and Sherwin Seamons have stated a Section 1983 claim against these defendants. Accordingly, we affirm the dismissal of all claims brought by Jane and Sherwin Seamons
 
 
 [7]
 Because Brian fails to allege sexual discrimination, we do not reach any of the other issues that are raised by Brian's Title IX claim. For example, although Title IX does protect against sexual harassment hostile educational environment, Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 75, 112 S.Ct. 1028, 1037-38, 117 L.Ed.2d 208 (1992), it is unclear what liability, if any, the school district might have for the acts of its students. Cf. Graham v. Independent Sch. Dist. No. I-89, 22 F.3d 991 (10th Cir.1994) (declining to impose liability under § 1983 to a school district for the independent conduct of its students). It is also unclear what liability, if any, an individual or institutional defendant may have for creating a sexual harassment hostile environment when it was caused by such defendant's mere negligence or gross negligence and not as a result of any deliberate intention to discriminate on the basis of sex. Franklin, 503 U.S. at 74-75, 112 S.Ct. at 1037-38. Cf. Roberts v. Colo. State Bd. of Agric., 998 F.2d 824, 832-33 (10th Cir.) (applying Title IX to cancellation of women's baseball program), cert. denied, 510 U.S. 1004, 114 S.Ct. 580, 126 L.Ed.2d 478 (1993). Because we decide Brian's Title IX claim solely on the basis that he has failed to allege sexual discrimination, we decline to address the other challenges to his Title IX claim
 
 
 [8]
 Of course, the 1983 action could not be predicated on a violation of Title IX itself. Such a duplicative effort would be barred. Cf. Starrett v. Wadley, 876 F.2d 808, 813-14 (10th Cir.1989) ("[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983.... [However,] if a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application.")
 
 
 [9]
 Of course, the qualified immunity defense does not apply to defendant Cache County School District. Our conclusion that the complaint states a valid First Amendment claim means that on remand Brian's First Amendment claim against the School District is reinstated as well
 
 
 [10]
 It is premature at this time to consider Brian's request for attorney's fees and punitive damages. We have considered all other issues raised on appeal and have concluded that they are without merit