PATRICK E. HIGGINBOTHAM, Circuit Judge:
The custodian of the Hillsboro Independent School District raped a 14-year-old eighth grade student in an empty classroom. The student through her parents filed this lawsuit under 42 U.S.C. § 1983 asserting deprivations of constitutional rights and seeking money damages for this assault from the Hillsboro Independent School District, as well as its trustees and present and past superintendents in their individual capacities. The district court denied motions to dismiss filed by the individual defendants under Rule 12(b)(6). This appeal of the district court’s *1414 denial of qualified immunity followed.[1] A divided panel of this court affirmed. We took the case en banc and now reverse.
We conclude that no claim was stated under 42 U.S.C. § 1983 against the individual defendants and that their motions to dismiss should have been granted.
I
The motions to dismiss targeted the amended complaint. It read in relevant part:
5. Jane Doe is a minor child who was, at the time of the events described, thirteen (13) years old. 6. Near the end of the 1992-1993 School Year (sometime in May of 1993), Jane Doe was kept after school to do special work on her studies---- 7. Jane Doe stayed after school____ 8. Jane Doe did her studies for a while, but was asked, by a teacher, to go upstairs in the school building to retrieve some supplies for the teacher. Jane Doe did. 9. When she went upstairs, a black male school district employee, then acting as a custodian, trapped Jane Doe in an empty classroom, and raped her. The school employee also physically assaulted Jane Doe in the course of the rape causing her bodily injury different irom the sexual assault. 10. Jane Doe did not tell anyone what had happened to her until the following Christmas holidays — when it became apparent that Jane Doe was pregnant. Jane Doe then told her mother and father what had happened. 11. The rapist was arrested, and pleaded guilty. 12. Jane Doe had a healthy baby boy in March of 1994 at fourteen (14) years of age____ 19. Other members of the maintenance staff have, on information and belief, convictions for murder, armed robbery, cruelty to animals, failure to ID-Fugitive, unlawful weapons possession, multiple DWI, and drug offenses____ 21. The Hillsboro Independent School District ... warned new employees to “stay away from the little girls.”
Plaintiffs contend that the individuals sued here are liable under two distinct theories. First, plaintiffs urge that “the amended complaint states a claim for liability based on the custody of Jane Doe, whereby she was owed some minimum degree of protection,” matching “the contours of liability” that were outlined in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Second, plaintiffs would bring themselves within our decision in Doe v. Taylor Indep. School Dist., 15 F.3d 443 (5th Cir.) (en banc), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). As we will explain, these theories offer plaintiffs no comfort.
II
A
In DeShaney v. Winnebago County Dept. of Social Services, the Supreme Court rejected the contention that government owes a constitutional duty to protect people from the misdeeds of other private actors, in the absence of a special relationship. We have not accepted the argument that school compulsory attendance laws create such a special relationship between student and school. In Walton v. Alexander, 44 F.3d 1297 (5th Cir. 1995)(en banc), we refused to find a special relationship between a state school for deaf children and its students who were residents in the school where they slept and took their meals. It is true that attendance at the school was not required by state law, and we emphasized the absence of this legal compulsion. It is equally true that poor students may have had no real alternatives. The year before Walton we held that, whatever the effect of compulsory attendance, it ended when compulsory attendance ended. Leffall v. Dallas Indep. School Dist., 28 F.3d 521, 529 (5th Cir.1994)(“[E]ven though Steadham may have been compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended.”). See also Johnson v. Dallas Indep. School Dist., 38 F.3d 198 (5th Cir.1994), cert. denied, 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995)[2]
*1415 We decline to hold that compulsory attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors. Much has been written about this issue, and we will not pause to rehearse fully the arguments again. See Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir.1996); Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 911 (6th Cir.1995); Dorothy J. v. Little Rock School Dist., 7 F.3d 729, 732 (8th Cir.1993); D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1368-73 (3d Cir.1992) (en banc), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); J.O. v. Alton Community Unit School Dist. 11, 909 F.2d 267, 272 (7th Cir.1990). We join every circuit court that has considered the issue in holding that compulsory school attendance, in Texas to attend seven hours of programmed education on each school day, does not create the custodial relationship envisioned by DeShaney. The restrictions imposed by attendance laws upon students and their parents are not analogous to the restraints of prisons and mental institutions. The custody is intermittent and the student returns home each day. Parents remain the primary source for the basic needs of their children. Finally, we find helpful the rationale of the Supreme Court’s decision in Ingraham to deny school children the protections of the Eighth Amendment:
The school child has little need for the protection of the Eighth Amendment. Though attendance may not always be voluntary, the public school remains an open institution. Except perhaps when very young, the child is not physically restrained from leaving school during school hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.
Ingraham v. Wright, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). Refusing to create a whole new class of constitutional rights does not leave the student without legal protection. A review of our recent decisions alone makes that clear. There are concerns pointing in a different direction. See Johnson, 38 F.3d 198, 203 n. 7 (5th Cir.1994). To say that compulsory attendance laws restrict the freedom of students and parents in significant ways, however, is not to say that this status of students is sufficiently akin to that of prisoners and persons committed to mental institutions to trigger a constitutionally rooted duty.
B
Nor does a state-created-danger theory save plaintiffs’ claims. Its narrow compass is reflected by the reality that we have never sustained liability on this ground. In Johnson we observed that “[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be hable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party’s crime to occur.” 38 F.3d at 201. See also L.W. v. Grubbs, 974 F.2d 119 (9th Cir.1992) (assault of nurse working with known sex offender under directive of state supervisor), cert. denied, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989) (woman raped when police impounded car of drunk driver leaving her in high crime area), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); White v. Rochford, 592 F.2d 381 (7th Cir.1979) (children left by police officers alone in car after arresting driver). Viewed in the light most favorable to the plaintiffs, the school district placed the student in the same area as a school custodian who had no known criminal record, sexual or otherwise, with school teachers in the same building but not in the immediate area. This will not trigger a duty under a state-created-danger theory, even if we were to adopt such a theory. Such post hoc attribution of known danger would turn inside out this limited exception to the principle of no duty.
Ill
Plaintiffs do not urge that the custodian acted under color of state law. Rather, *1416 they assert that the defendants breached a constitutional duty in failing to protect the child from the rape by the janitor. The argument is that the defendants are liable if there was a “pattern of events that would give some warnings”; that Jane Doe’s pleadings set forth facts that were known, or “learned” (“ ‘fondling students, voyeurism, and the like’; warnings to the custodians to ‘stay away from the little girls’ ”). The argument continues that “although the predictors do not point to specific prior incidents of sexual abuse of a specific student, they do point plainly toward the dangerous combination of crime, sex and violence.” The reliance upon Doe v. Taylor concludes with the assertion that the individual defendants were deliberately indifferent to these risks by not conducting an adequate check of employees’ backgrounds.
Unlike Doe v. Taylor, in which a school employee acted under color of state law, this ease requires us to locate the primary constitutional wrong in the board and school officials. The Supreme Court has recently indicated that municipal authorities can be liable under § 1983 if a hiring decision “reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.” Board of the County Commissioners of Bryan County v. Brown, — U.S. -,---, 117 S.Ct. 1382, 1391-92, 137 L.Ed.2d 626 (1997).
The Bryan County Court declined to announce a bright-line rule that municipal officials can never be liable under § 1983 for an isolated hiring decision that neither constitutes nor directs a violation of federal law. See id. — U.S. at---, 117 S.Ct. at 1392-93. But the Court warned that liability in such eases will necessarily be rare: “Only where adequate scrutiny of an applicant’s background would lead a reasonable policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party’s federally protected right can the official’s failure to adequately scrutinize the applicant’s background constitute ‘deliberate indifference.’ ” Id. at---, 117 S.Ct. at 1391-92. See also City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (“[A] municipality can be hable under § 1983 only where its policies are the ‘moving force [behind] the constitutional violation.’ ” (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978))); Gonzalez v. Ysleta Indep. School Dist., 996 F.2d 745, 760-62 (5th Cir.1993) (finding the evidence insufficient to establish .deliberate indifference where a school district failed to terminate a teacher with a history of abusing students sexually).
In Bryan County, a police officer used excessive force in extricating a suspect from her vehicle. The plaintiff’s claim of deliberate indifference in hiring, then, was coupled with underlying conduct under color of state law. In this case, by contrast, the janitor did not act under color of state law in raping Doe. Under the facts alleged by Doe, there can be no recovery even if the janitor were acting under color of state law. When the district court afforded Doe the opportunity to amend his complaint, he could not even allege that the custodian who assaulted his daughter either had a prior record of violent crime or previously had been reported to the officials for sexual misbehavior towards students. Even in the context of resisting a Rule 12 motion to dismiss, plaintiffs have demonstrated an inability to show a nexus between any failure to check criminal background and this assault.
The duty articulated in Bryan County does not detract from DeShaney’s general rule that municipalities have no duty to protect citizens from the private actions of fellow citizens. Recognizing a potential for § 1983 liability based on egregious hiring decisions does not entail endorsement of the view that defendants such as the Hillsboro Independent School District have a duty to protect students from threats from other sorts of third parties.
IV
Plaintiffs have stated no claim against these individuals. The denial of the motions to dismiss is reversed. The ease is remanded with instructions to enter judgments for the defendants in their individual capacities *1417 and for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. The individual defendants have also appealed the district court's denial of their motions to dismiss claims under Title DC, 20 U.S.C. §§ 1681-1688. Like the panel, we do not read the amended complaint as attempting to state a Title IX theory against the individual defendants.

. In Texas, a child must attend each school day, which is defined as at least seven hours. The child must attend for the time the "program of instruction” is provided. See Tex. Educ.Code Ann. §§ 25.082 and 25.083. A child who fails to stay after completion of the program of instruc *1415 tion does not violate compulsory attendee laws. The application of the statute in this case is not certain. We are not prepared to say under the pleadings that Jane Doe was not in the school at the time of the assault under compulsion of state attendance laws.