**Kevin ALSTON and Sandra Alston, as next friend of their minor daughter, Ashley Alston, et al., Plaintiffs,**

**v.**

**VIRGINIA HIGH SCHOOL LEAGUE, INC., Defendant.**

No. CIV. A. 97–0095–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 16, 1997.

Mary Catherine Bauer, Richmond, VA, for Plaintiffs.

Terry Lynn, Robert Craig Wood, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On August 19, 1997, plaintiffs, as next friends of their minor daughters, brought this action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* and 42 U.S.C. § 1983, alleging that the defendant has denied certain female athletes in the Commonwealth of Virginia's public high schools equal treatment, opportunities and benefits based on their sex in violation of Title IX and the Equal Protection Clause of Amendment XIV of the United States Constitution. On September 9, 1997, the defendant moved to dismiss all claims arguing (1) that plaintiffs failed to state Title IX and § 1983 causes of action for purposes of Fed.R.Civ.P. 12(b)(6); and (2) that plaintiffs' § 1983 claim is "subsumed" within their Title IX claim, is precluded and, therefore, must be dismissed. For the reasons stated more fully below, the court will deny defendant's motion to dismiss both the Title IX claim and the § 1983 claim.

### I. Alleged Facts in Plaintiffs' Complaint

Plaintiffs in this action are the parents of minor girls enrolled in various public high schools in Virginia. The defendant, the Virginia High School League, Inc. ("VHSL"), is an incorporated association of several hundred high schools which administers interscholastic athletic competition in Virginia. The plaintiffs allege that the VHSL's system of scheduling athletic seasons by first aligning high schools by "A," "AA" and "AAA" designations based on high schools' size contributes to sex discrimination against certain female athletes.

Specifically, plaintiffs assert that the VHSL uniformly schedules boys' sports for the same season across the A, AA and AAA groupings but schedules certain girls' sports to be played in different seasons depending on the division in which a school competes.[1] Plaintiffs maintain that female high school athletes who play multiple sports must give up one (or more) sport when their high schools change size designation and certain sports, previously scheduled in different sea-

sons, now occur in the same season. The ultimate results of this forced choice between sports, say the plaintiff-parents, are the consequent damages from their daughters' (1) lost opportunities to play all sports of their preference; (2) reduced opportunities to obtain college athletic scholarships; and (3) emotional distress arising from the claimed unequal treatment. (Complaint at 12)

Plaintiffs allege that because male high school athletes do not face the same dilemma because the season for a particular sport is uniform across the A, AA and AAA divisions, the VHSL violates Title IX and the Equal Protection Clause, the latter of which is actionable through § 1983.

Plaintiffs plan to seek class action certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. Plaintiffs pray for declaratory, injunctive and monetary relief.

### II. Discussion

#### A. Potential Class Action Certification

Plaintiffs apparently will seek certification for a class consisting of "all females who participate in sports in any public school in the Commonwealth of Virginia which has been or which may be subjected to division realignment and ... all females who will in the future participate in sports in any public school in the Commonwealth of Virginia which may be subjected to division realignment." (Complaint at 6)

The issue of class certification is governed by Fed.R.Civ.P. 23, which contains five requirements that plaintiffs seeking certification must meet. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative

---

**1.** Plaintiffs allege, for example, that girls tennis, girls volleyball, and girls basketball, the season in

which the sport is played is not uniform across A, AA and AAA groupings. (Complaint at 8)

parties will fairly and adequately protect the interests of the class [adequacy].

Class-wide relief is appropriate if:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ... [or] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

Fed.R.Civ.P. 23(b)(2)-(3).

■ Because the court has no evidence before it of the number of persons qualifying for the class as tentatively defined by plaintiffs, it would be premature either to grant or to deny class certification. The court lacks information concerning the number of schools in Virginia subjected to, or likely to be subjected to, division realignment. Rule 23(c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Resolution of this issue is not yet practicable and, thus, the court passes on the question and reserves it for another day.

*B.   Standard for a Motion to Dismiss*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure "failure to state a claim upon which relief can be granted" provides grounds for dismissal. For purposes of a Fed.R.Civ.P. 12(b)(6) motion, all factual allegations in a plaintiff's complaint must be accepted as true. *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994). A plaintiff's complaint ought not be dismissed unless it is apparent that the plaintiff "would not be entitled to relief under *any* facts which could be proved in support of [his] claim." *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991) (emphasis added); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). For this reason, Rule 12(b)(6) dismissals are generally disfavored. *Id.*

■ The standard governing a Rule 12(b)(6) motion is applied more strictly than normal when a plaintiff alleges civil rights violations. *See Bernheim v. Litt,* 79 F.3d 318 (2nd Cir.1996).

*C.   Title IX Claim*

■ Title IX provides, in pertinent part, that:

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681(a). Interscholastic sports fall within the "program or activity" element of the statute. The Code of Federal Regulations interpreting Title IX state, *inter alia,* that:

[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic ... athletics offered by a recipient....

34 C.F.R. § 106.41(a). A Title IX "recipient" is defined by the Regulations as:

any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity ... to whom Federal financial assistance is extended ... and which operates an education program or activity which receives or benefits from such assistance....

34 C.F.R. § 106.2(h).

Plaintiffs have asserted that "VHSL is an incorporated federation of public high schools, which receives federal funding and which operates an education program or activity which receives or benefits from such assistance." (Complaint at 9) Assuming that to be true, as the court must for purposes of a Rule 12(b)(6) motion, plaintiffs state a Title IX claim for which relief can be granted. *See Horner v. Kentucky High School Athletic Ass'n,* 43 F.3d 265 (6th Cir.1994) (holding that Kentucky High School Athletic Associa-

tion qualified as agent of the State and as "recipient" of Federal funds so as to be subject to Title IX when Association received dues from member schools which received Federal funds).

Plaintiffs have stated a claim upon which relief could be granted under Title IX. Plaintiffs have alleged facts that, if proven, meet all necessary elements of a Title IX claim, namely, that (1) their minor daughters were excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program, (2) that the program receives Federal assistance, and (3) that exclusion from the program was on the basis of sex. 20 U.S.C. § 1681(a); *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir.1996). Because plaintiffs need allege no more for purposes of a motion to dismiss, the court will deny the VHSL's instant motion.

### D. Equal Protection Claim

■ When Congress enacted Title IX, the statute established a comprehensive administrative enforcement scheme. *Mennone v. Gordon*, 889 F.Supp. 53 (D.Conn.1995). In addition, the 20 U.S.C. § 1681 provides for an implied private right of action. *Cannon v. University of Chicago*, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979). In providing such extensive enforcement mechanisms in Title IX, the VHSL argues that Congress clearly intended to foreclose simultaneous enforcement of sex discrimination claims under 42 U.S.C. § 1983. *See Williams v. School Dist. of Bethlehem*, 998 F.2d 168 (3rd Cir.1993), *rehearing denied, cert. denied* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994); *Mennone*, 889 F.Supp. 53; *Does v. Covington County School Bd. of Educ.*, 930 F.Supp. 554 (M.D.Ala.1996). Thus, defendant argues, a § 1983 claim against a State actor, officer or entity to remedy an asserted deprivation of a Federal Constitutional right is "subsumed" within a coexisting Title IX claim when the alleged Constitutional violation occurs within the Federally-funded education context.

Without citing to it or to any other case in its instant motion, the defendant tacitly invokes the doctrine established by *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." The *Sea Clammers* preclusion doctrine, however, was applied narrowly by the Supreme Court to the facts in that case. There the court held only that the "elaborate provisions" of the Federal Water Pollution Control Act Amendments of 1972 ("Clean Water Act"), 33 U.S.C. § 1251 *et seq.* and of the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401 *et seq.* precluded a § 1983 action against a State official for violation of those same Federal statutes. *Id.* As the court stated, "When a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." *Id.* (citation and quotations omitted).

In the Title IX area, the Courts of Appeals for the Tenth and Sixth Circuits both recently distinguished *Sea Clammers* and held that a Title IX claim does not preclude or "subsume" a § 1983 claim for redress of the same underlying conduct. *Seamons v. Snow*, 84 F.3d 1226 (10th Cir.1996); *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716 (6th Cir. 1996). As the court noted in *Seamons:*

[t]he National Sea Clammers doctrine 'speaks only to whether federal statutory rights can be enforced both through the statute itself *and* through section 1983'; it does not 'stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim.'

84 F.3d at 1233 (quoting *Lillard*, 76 F.3d at 723) (emphasis in original).

In concurring with the above analysis, this court notes the contrary authority from the Third Circuit. *See Pfeiffer v. School Bd. For Marion Ctr. Area*, 917 F.2d 779, 789 (3rd Cir.1990); *accord Williams*, 998 F.2d at 176. Without benefit of the extensive analysis undertaken later by the *Seamons* and *Lillard*

courts, the Third Circuit cited *Sea Clammers* only for its general doctrine and failed to note the distinction between the enforcement of statutory rights by a Title IX claim and the enforcement of wholly independent Constitutional rights by a contemporaneous § 1983 claim. *Id.*

In the absence of Fourth Circuit authority on the preclusion issue, the court adopts the thorough and sound analysis of the Tenth and Sixth Circuit cases cited *supra.* Accordingly, the court will deny the defendant's motion to dismiss, as subsumed, plaintiffs' § 1983 claim.

An appropriate Order shall issue this day.

### ORDER

Upon consideration of the defendant's September 9, 1997 Motion to Dismiss and for the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that the instant motion to dismiss shall be, and hereby is, DENIED as to both the Title IX claim, 20 U.S.C. § 1681 *et seq.,* and the 42 U.S.C. § 1983 claim of plaintiffs' Complaint.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.