Melissa **JENNINGS** and Debbie Keller, Plaintiffs,

v.

**UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Anson Dorrance, individually and as Women's Soccer Coach at UNC, William Palladino, individually and as Assistant Women's Soccer Coach at UNC, Chris Ducar, individually and as Assistant Women's Soccer Coach at UNC, Tracy Ducar, individually and as Assistant Women's Soccer Coach at UNC, Bill Prentice, individually and as Athletic Trainer at UNC, the estate of Michael Hooker, individually and as former Chancellor at UNC, Susan Ehringhaus, individually and as Assistant Chancellor at UNC, Richard Baddour, individually and as Director of Athletics for UNC, Beth Miller, individually and as Senior Associate Director of Athletics at UNC, and John Swofford, individually and as former Director of Athletics for UNC, Defendants.**

No. 1:99–CV–400.

United States District Court, M.D. North Carolina.

Nov. 13, 2002.

Marvin Schiller, Raleigh, NC, Louis Anthony Varchetto, Ray Hunter Rittenhouse, Marcelline Defalco, Mulherin Rehfeldt &

Varchetto, P.C., Wheaton, IL, for Plaintiffs.

Thomas J. Ziko, Sylvia Hargett Thibaut, Celia Grasty Lata, Raleigh, NC, Frederic J. Artwick, Sidley & Austin, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is before the Court on Defendants' Motions to Dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure [Doc. # 44]. For the reasons stated below, the Defendants' motions are GRANTED IN PART and DENIED IN PART.

### I.

The facts of this case, stated in the light most favorable to the Plaintiffs, are as follows. The Plaintiffs, Melissa Jennings and Debbie Keller, are former members of the women's intercollegiate soccer team at the University of North Carolina at Chapel Hill ("UNC"). The Plaintiffs have brought this suit against the following, all of whom are current or former employees of UNC, which is also a Defendant: Anson Dorrance, the head coach of the women's soccer team; William Palladino, an assistant coach; Chris Ducar, an assistant coach; Tracy Ducar, an assistant coach; Bill Prentice, an athletic trainer; the estate of Michael Hooker;[1] Susan Ehringhaus, an assistant chancellor; John Swofford, a former athletic director; Richard Baddour, the current athletic director; and Beth Miller, an assistant athletic director. The individual Defendants are sued both individually and in their official capacities as employees of UNC.

The Plaintiffs allege that Mr. Dorrance repeatedly interrogated them about their personal lives, including but not limited to their sexual activities, coerced and intimidated them to report the sexual activities of their teammates, made lewd and degrading comments regarding other team members in their presence, repeatedly placed unwanted and uninvited telephone calls to Ms. Keller for the purpose of monitoring her personal activities, repeatedly made inappropriate and uninvited physical contact with Ms. Keller by touching her head and stroking her hair, and made uninvited, sexually explicit comments to Ms. Keller regarding a teammate.

The Plaintiffs also allege that in October of 1996 and again in 1998, Mr. Dorrance coerced Ms. Keller into meeting with him, at which times he made uninvited sexual advances. In 1996, plaintiff alleges that Mr. Dorrance coerced Ms. Keller to join him in secluded bleachers where he professed his affection for her and suggested that she should be intimate with as many people as possible. In 1998, plaintiff alleges that Mr. Dorrance coerced Ms. Keller to join him at a restaurant where he again professed his affections and blamed Ms. Keller's parents for keeping Mr. Dorrance and Ms. Keller apart.

According to the Plaintiffs, Mr. Palladino participated with Mr. Dorrance in uninvited sexual harassment, witnessed other such conduct in which he did not participate, and failed to report any of his own, or Mr. Dorrance's, conduct to UNC. In addition, the Plaintiffs allege that Mr. Ducar, Ms. Ducar, and Mr. Prentice witnessed some of Mr. Dorrance's conduct and failed to report any of the conduct to UNC.

The Plaintiffs allege that Mr. Dorrance encouraged Ms. Jennings, while she was a minor, to ingest alcohol, knowing that the consumption of alcohol was against her religious beliefs. On September 7, 1996, Mr. Dorrance also allegedly coerced Ms.

---

1. Michael Hooker was a former chancellor. Chancellor Hooker is now deceased.

Jennings into spending $400 of her own money to purchase supplies for her teammates and for members of the opposing team.

According to the Plaintiffs, Chancellor Hooker, Ms. Ehringhaus, Mr. Baddour, Ms. Miller, and Mr. Swofford received numerous complaints about Mr. Dorrance on behalf of the Plaintiffs, but failed to intervene or prohibit his actions. Further, in alleged retaliation for the complaints made against him, Mr. Dorrance released Ms. Jennings from the soccer team in 1998. Finally, Ms. Keller alleges that Mr. Dorrance induced the coach of the women's national soccer team to exclude her from the team.

Plaintiffs have brought eight claims. The first claim is brought against all Defendants under 42 U.S.C. § 1983 and alleges violations of Plaintiffs' constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. The second claim is also brought against all Defendants and alleges violations of Plaintiffs' rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* The third claim is brought against Mr. Dorrance for intentional interference with Ms. Keller's contractual relationship with the United States Soccer Federation. The fourth claim is brought against Mr. Dorrance by Ms. Keller for assault. The fifth claim is brought against Mr. Dorrance by Ms. Keller for battery. The sixth claim is brought against Mr. Dorrance and UNC by Ms. Jennings for constructive fraud. The seventh claim is brought against UNC by both Plaintiffs for negligent retention of Mr. Dorrance. The eighth claim is brought against Mr. Dorrance and UNC by both Plaintiffs for invasion of privacy. Defendants contend that all of these claims should be dismissed under Rule 12(b)(1) or 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction, or alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

II.

Defendants base their motion to dismiss in part on 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. In support of dismissal, the Defendants assert that: (1) personal jurisdiction does not exist with respect to the majority of the claims, (2) this Court does not have subject matter jurisdiction over the claims, and (3) the Defendants have Eleventh Amendment sovereign immunity.

Title 28 U.S.C. § 1331 gives federal district courts "original jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States." Plaintiffs allege violations of 42 U.S.C. § 1983 (" § 1983") under Count I and violation of 20 U.S.C. § 1681 ("Title IX") under Count II, both federal laws. Therefore, the claims under Count I and Count II both arise under federal law satisfying the requirements of 28 U.S.C. § 1331.

Title 28 U.S.C. § 1332(a) gives district courts original jurisdiction of civil actions where the amount in controversy is $75,000 and is between citizens of different states. The Plaintiffs' claims under North Carolina law, Counts III–VIII, each seek relief in excess of $75,000. The sum claimed by the Plaintiff controls if the claim is made in good faith. *St.Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The Plaintiffs allege, and the Defendants have not disputed, that the Plaintiffs are citizens of Illinois and the Defendants are citizens of North Carolina. Since the Defendants have not challenged the Plaintiffs' jurisdictional allegations, the facts are assumed as pled. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Therefore, Plaintiffs' Counts III–VIII

meet the requirements of 28 U.S.C. § 1332.

■ In the alternative, the Defendants contend that the Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the Plaintiffs' complaint as true, it appears certain the Plaintiffs cannot prove any set of facts in support of their claim that entitles them to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). When a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, a complaint should not be dismissed unless it is certain that the Plaintiffs are not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

### A.

■ First, Defendants move to dismiss the claims brought under 42 U.S.C. § 1983. Defendants argue that the § 1983 claims against Defendant UNC are barred under the Eleventh Amendment. This amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State" or by foreign nationals. However, the immunity is not absolute. States may waive it, and Congress may override it when legislating pursuant to the Fourteenth Amendment, though it has rarely done so. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that Congress did not intend to abrogate Eleventh Amendment immunity in enacting 42 U.S.C. § 1983).

Nonetheless, the basic rule is that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. U.S. Const. amend. XI. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Florida Dep't of Health v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam)). The State of North Carolina has not waived its Eleventh Amendment immunity in any area that is relevant to this suit. *Cf., e.g., Huang v. Board of Governors of Univ. of North Carolina,* 902 F.2d 1134, 1139 (4th Cir.1990) (finding that the State has not waived immunity as it applies to the state university system). In addition, Congress has not overridden that immunity in any relevant area save for Title VII. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 452, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that, in enacting Title VII, Congress abrogated Eleventh Amendment immunity). Therefore, under *Pennhurst* and the Eleventh Amendment, the § 1983 claims against UNC must be dismissed for lack for personal jurisdiction.[2]

### B.

■ Defendants also argue that the claims against the individual Defendants in their official capacities should be dismissed. The United States Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983," where the plaintiff is seeking money damages. *Will*

---

2. The Plaintiffs have conceded that UNC may not be held liable for damages under 42 U.S.C. § 1983. (Pls.' Resp. to Defs.' Mot. to Dismiss Pls.' First Am. Compl. [Doc. # 71] at 8.)

*v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Under *Will,* therefore, the claims for money damages against the individual Defendants acting in their official capacities must be dismissed.[3]

If, however, the plaintiff is seeking injunctive relief, then the state official acting in an official capacity is a person under 42 U.S.C. § 1983, *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304, and "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Accordingly, an action for injunctive relief against the individual Defendants acting in their official capacities can be brought.

■ However, in order to have standing to seek equitable relief, one must have a personal stake in the relief being sought. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Because Plaintiffs are no longer enrolled at UNC[4] and are no longer members of the UNC women's soccer team, Plaintiffs do not have a personal stake in Mr. Dorrance being removed from his position, which is the only equitable relief sought. Accordingly, the Plaintiffs' request for injunctive relief is now moot.

For these reasons, the § 1983 claims against the individual Defendants acting in their official capacities will be dismissed.

### C.

Defendants also argue that the claims against the individual Defendants in their personal capacities should be dismissed.

### 1.

■ The Defendants first note that any events occurring before August 25, 1995, are barred by the three-year statute of limitations that applies in § 1983 and Title IX actions. *See National Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1162–63 n. 2 (4th Cir.1991). Plaintiffs argue, however, that under the "continuing violation doctrine," even events that occurred outside the limitations period may be considered.

Federal courts, beyond interpretation of the statutory language, look to cases decided under Title VII to inform an analysis under Title IX. *Doe v. University of Illinois,* 138 F.3d 653 (7th Cir.1998). In a Title VII context, claims based on discrete discriminatory acts must be filed within the limitations time period and are not actionable even if they are related to acts alleged in the timely filed charges. *National R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). However, since a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice, as long

---

**3.** The Plaintiffs have conceded that the individual Defendants acting in their official capacities may not be held liable for damages under 42 U.S.C. § 1983. (Pls.' Resp. to Defs.' Mot. to Dismiss Pls.' First Am. Compl. [Doc. # 71] at 8.)

**4.** Defendants filed a Suggestion of Mootness [Doc. # 77] on June 6, 2000. Attached is the Affidavit of David C. Lanier. Mr. Lanier is the registrar at UNC, and he testifies that Ms.

Jennings has graduated from UNC. (Lanier Aff. ¶ 3.) Plaintiffs have not responded. Under Federal Rule of Civil Procedure 12(b)(1), courts can look beyond the pleadings to determine a matter on standing. *Smith v. Washington Metropolitan Area Transit Authority,* 290 F.3d 201, 205 (4th Cir.2002). Only Federal Rule of Civil Procedure 12(b)(6) converts to a summary judgment when additional evidence is examined. *Id.*

as one of the acts contributing to the hostile environment occurred within the limitations period the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. *Id.* at 2074. A court's task is to determine whether the alleged acts are part of the actionable hostile work environment claim, and if so, whether any act falls within the statutory time period. *Id.* at 2076.

Therefore, any of the Plaintiff's claims under § 1983 and Title IX that are based on discrete acts of misconduct predating August 25, 1995 are time barred. However, any claims based on a single hostile environment practice with at least one constituent act occurring after August 25, 1995, are timely. At this stage of the proceedings, the facts have not been developed. Accordingly, no decision can be made as to whether the violation should have been clear at an earlier time. Therefore, no decision can be made as to what, if any, events are barred by the statute of limitations.

2.

■ Second, Defendants argue that Plaintiffs' claims under § 1983 are subsumed within the Title IX claims, because the Supreme Court has said that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Defendants contend that Title IX is "sufficiently comprehensive" to preclude any claims under § 1983.[5] The circuits that have addressed this issue are split. Two circuits hold that there is

preemption. *See Bruneau v. South Kortright Cent. Sch. Dist.,* 163 F.3d 749 (2d Cir.1998) (Section 1983 claim is subsumed within Title IX claim); *Waid v. Merrill Area Pub. Sch.,* 91 F.3d 857 (7th Cir.1996). Four circuits hold that there is no preemption. *See Crawford v. Davis,* 109 F.3d 1281 (8th Cir.1997) (Title IX does not foreclose use of § 1983 to redress violation); *Seamons v. Snow,* 84 F.3d 1226 (10th Cir. 1996) (same); *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716 (6th Cir.1996) (same); *Lakoski v. James,* 66 F.3d 751, 755 (5th Cir.1995).

The *Seamons* holding presents the rationale by which courts find against preemption. In *Seamons,* the analysis focused upon whether Title IX has a "comprehensive enforcement scheme," sufficient to demonstrate Congressional intent to preclude § 1983 remedies. 84 F.3d at 1234. The *Seamons* court concluded that a federal statutory scheme does not preempt "independently existing constitutional rights, which have contours distinct from the statutory claim." *Id.* (quoting *Lillard,* 76 F.3d at 723). Therefore, plaintiffs who bring § 1983 claims, based on constitutional rights, do not circumvent Title IX, but seek remedies independently available to them. Furthermore, the *Seamons* court noted that the private right of action under Title IX is implied and that the only enforcement mechanism Title IX expressly provides is a procedure for terminating financial support for institutions. *See id.* at 1234 (agreeing with the Sixth Circuit analysis in *Lillard).* In this regard, Title IX does not have a comprehensive enforcement scheme, which suggests that Congress did not intend to preempt plaintiffs from bringing § 1983 claims.

---

**5.** If preemption is found, Plaintiffs will be precluded from suing officials in their individual capacities under Title IX. *See Kinman v. Omaha Pub. Sch. Dist.,* 171 F.3d 607, 611

(8th Cir.1999) (holding Title IX does not support an action against official in an individual capacity).

The Fourth Circuit has not directly addressed this issue. However, the Fourth Circuit has allowed cases to proceed with claims arising under both Title IX and § 1983. *Mentavlos v. Anderson,* 249 F.3d 301 (4th Cir.2001); *Baynard v. Malone,* 268 F.3d 228 (4th Cir.2001). These cases addressed the merits of the individual cases but did not address the preclusive effect of the claims. *Id.* In addition, two district courts from within the Fourth Circuit have held that a claim under Title IX does not preclude or "subsume" a § 1983 claim, arising from the same underlying conduct, when the § 1983 claim enforces independent constitutional rights. *See Carroll K. v. Fayette County Bd. of Educ.,* 19 F.Supp.2d 618, 623 (S.D.W.Va.1998); *Alston v. Virginia High Sch. League,* 176 F.R.D. 220, 223–24 (W.D.Va.1997) (supporting the *Seamons* analysis).

The *Seamons* decision and the other Circuit decisions, allowing or disallowing preemption, preceded the Supreme Court's decision in *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). In *Gebser,* the Supreme Court held that a school district was not liable for "damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Id.* at 292–93, 118 S.Ct. 1989. The Supreme Court did not address whether actions could be brought against a teacher in an individual capacity under § 1983, but the Court did say, "[o]ur decision does not affect any right of recovery that an individual may have against a school district as a matter of state law or against the teacher in his individual capacity under state law or under 42 U.S.C. § 1983." *Id.* at 292, 118 S.Ct. 1989; *see also Kinman v. Omaha Pub. Sch. Dist.,* 171 F.3d 607, 611 (8th Cir.1999) (allowing a claim against an individual teacher under

§ 1983). Thus, the Supreme Court has implied that actions may be brought under Title IX against the funding recipient and under § 1983 against the individual.

Given the reasoning in *Seamons,* and the Supreme Court's decision in *Gebser,* a claim under Title IX does not preempt enforcement of independent constitutional rights under § 1983 where both claims arise from the same underlying conduct. Therefore, Plaintiffs' § 1983 claims are not subsumed within Plaintiffs' Title IX claims.

**3.**

█ Federal Rule of Civil Procedure 8(a) governs the specificity by which the Plaintiffs must plead their § 1983 claim. Rule 8(a)(2) provides that a complaint need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Unlike the preceding Federal Rules of Equity, the Federal Rules of Civil Procedure make no mention of any "fact" pleading requirement. 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1218 at 180 (1990) (noting that FRCP Form 9 illustrates a negligence complaint with conclusory language: defendant "negligently drove a motor vehicle against plaintiff"). The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957));[6] *Bennett v. Schmidt,* 153 F.3d 516 (7th Cir.1998) (finding that a complaint need not allege "any" facts). Whether a complaint satisfies Rule 8(a)(2), is to be determined by whether the pleadings provide fair notice to the opposing party. *Conley,* 355 U.S. at 47, 78 S.Ct. 99.

---

**6.** The Supreme Court recognizes that Federal Rule of Civil Procedure 9(b) requires particu-

larity when alleging fraud or mistake. *See Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160.

Federal Rule of Civil Procedure 8(f) provides that "all pleadings shall be so construed as to do substantial justice." Lawsuits are to be determined on the merits, and not whether plaintiffs meet technical exactness when pleading. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Furthermore, complaints are construed favorably to their drafters. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999); *Hrubec v. National Railroad Passenger,* 981 F.2d 962 (7th Cir.1992).

The complaint alleges that Mr. Dorrance "intentionally and systematically subject[ed] Plaintiffs to inappropriate conduct and unwelcome sexual harassment and thereby created a hostile environment at UNC." (First Am. Compl. [Doc. # 54] ¶ 16.) In support of this allegation, the Plaintiffs allege that Mr. Dorrance used his position of authority as women's soccer coach to coerce the Plaintiffs into reporting their sexual activities to him, (*id.* ¶¶ 17–18); that Mr. Dorrance made lewd and degrading comments (*id.* ¶ 19); that Mr. Dorrance made uninvited and inappropriate physical contact with Ms. Keller (*id.* ¶ 21); that Mr. Dorrance made uninvited sexual advances and sexually explicit comments towards Ms. Keller (*id.* ¶¶ 22–23); that Mr. Dorrance made telephone calls and sent e-mail to Ms. Keller for the purpose of harassing her and monitoring her activities (*id.* ¶¶ 20, 25); that Mr. Dorrance coerced Ms. Keller to join him in secluded bleachers where he professed his affection for her and suggested that she be intimate with as many people as possible, (*id.* ¶ 80); and that Mr. Dorrance coerced Ms. Keller to join him at a restaurant where he again professed his affections, (*id.* ¶ 81).

With respect to Mr. Dorrance, Plaintiffs have satisfied Rule 8(a)(2) by providing a statement of the claim for which the Plaintiffs contend they are entitled to relief. The statement that Mr. Dorrance "intentionally and systematically subject[ed]" Ms. Jennings and Ms. Keller to "inappropriate conduct and unwelcome sexual harassment," creating a "hostile environment," provides fair notice to Mr. Dorrance regarding the basis of Plaintiffs' claim. The conclusory nature of the Plaintiffs' allegation, does not merit dismissal because a claimant is not required to plead specific facts. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–3, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). Furthermore, in regards to Ms. Keller, the complaint alleges specific sexual harassment with facts detailed beyond the requirements of Rule 8(a)(2). Thus both Plaintiffs satisfy Rule 8(a)(2) requirements when stating a claim against Mr. Dorrance.

The complaint alleges that assistant coach, Mr. Palladino, "participated with Dorrance in uninvited sexual harassment and inappropriate conduct..." (First. Am. Compl. [Doc. # 54] ¶ 28.) When construing the complaint in favor of the Plaintiffs, it can be inferred that Mr. Palladino's alleged sexual harassment was directed towards the Plaintiffs. The complaint provides a statement of the claim against this Defendant that could entitle a Plaintiff to relief.

Viewing the complaint in this light serves substantial justice and avoids an overly technical dismissal of the claim. Failure to provide specifics of the type of "sexual harassment" that occurred does not merit dismissal, as conclusory statements can provide fair notice to Defendants of alleged misconduct.

Plaintiffs allege that Defendants Hooker, Ehringhaus, Baddour, Miller, and Swofford are liable under § 1983 for failing to take preventative action in response to repeated reports of sexual harassment by Defendant Dorrance. There are three elements for establishing supervisory liability under § 1983:(1) that the supervisor

had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994) (internal quotations omitted).

■ Plaintiffs have alleged misconduct by Defendants Hooker, Ehringhaus, Baddour, Miller, and Swofford sufficient to meet the elements of supervisory liability. Plaintiffs have satisfied the first element by alleging that these Defendants received numerous complaints regarding Defendant Dorrance's sexual harassment of Plaintiffs. As discussed with respect to Defendant Dorrance, this sexual harassment has been sufficiently pled. (First Am. Compl. ¶ 40.) Plaintiffs' allegation that Defendants failed to intervene or prohibit Defendant Dorrance's misconduct (*id.* ¶ 41) satisfies the second element. *See Shaw,* 13 F.3d at 799 (observing that continued inaction in the face of documented, widespread abuses can establish a supervisor's deliberate indifference). Plaintiffs' allegation that Defendant Dorrance's unconstitutional conduct continued as a direct result of his supervisors' failure to intervene (First Am. Compl. ¶ 48) is sufficient to plead the third element. *See Shaw,* 13 F.3d at 799 (noting that an affirmative causal link may be supplied by ordinary tort principles that hold defendants liable for the natural consequences of their actions). Thus, when reading the complete Complaint, Ms. Ehringhaus, Mr. Baddour, Ms. Miller, Mr. Swofford, and the estate of Chancellor Hooker were provided fair notice of a § 1983 claim arising from their alleged failure to intervene or prohibit Mr. Dorrance's alleged misconduct.

■ However, Plaintiffs' allegations that Defendants Palladino, Mr. Ducar, Ms. Ducar, and Prentice witnessed but failed to report Defendant Dorrance's sexual harassment misconduct do not state viable § 1983 claims. The statute imposes liability only for conduct that "subjects, or causes to be subjected," a person to deprivation of a right. 42 U.S.C. § 1983; *see, e.g., Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402–03, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). As assistant coaches and an athletic trainer, Defendants Palladino, Mr. Ducar, Ms. Ducar, and Prentice were not Defendant Dorrance's supervisors and had no authority over his behavior. In the absence of legal control over Defendant Dorrance, these Defendants' reporting omissions cannot be said to have affirmatively caused the alleged deprivation of Plaintiffs' constitutional rights. Therefore, the § 1983, failure-to-report claims against Defendants Palladino, Mr. Ducar, Ms. Ducar, and Prentice must be dismissed.[7] *See Reid v. Kayye,* 885 F.2d 129, 131–32 (4th Cir.1989) (holding that defendants were not in control and, therefore, were not supervisors and not subject to liability under § 1983); *see also Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1411 (5th Cir.1995) ("Simply put, White is responsible under § 1983 for breaching her duty to report Siepert's abuse of Sarah only if state law also empowered her with a right of legal control over Siepert.").

Construing the complaint in favor of the Plaintiffs, it can be inferred that Mr. Dorrance's alleged "inappropriate and harass-

7. As discussed above, the § 1983 claim against Defendant Palladino based on his own direct participation in sexual harassment conduct remains.

ing" conduct includes his alleged uninvited sexual harassment. As discussed, this sexual harassment has been sufficiently pled. Viewing the complaint in this light serves substantial justice and avoids an overly technical dismissal of the claim. Thus, when reading the complete complaint, Ms. Ehringhaus, Mr. Baddour, Ms. Miller, Mr. Swofford, and the estate of Chancellor Hooker were provided fair notice of their alleged failure to intervene or prohibit Mr. Dorrance's alleged misconduct.

In conclusion, Plaintiffs have provided sufficient statements of claims against Mr. Dorrance, Mr. Palladino, Ms. Ehringhaus, Mr. Baddour, Ms. Miller, Mr. Swofford, and the estate of Chancellor Hooker, to show that they are entitled to relief.

### 4.

Fourth, Defendants argue that Mr. Dorrance is entitled to qualified immunity.[8] Qualified immunity protects government officials from liability under § 1983 so long as the conduct of the official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A court evaluating a claim of qualified immunity

'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert,* 526 U.S. 286, 289, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)).

### a.

The first question is whether Plaintiffs have alleged a deprivation of an actual constitutional right. Plaintiffs have alleged the deprivation of two such rights: the first is the right of privacy, and the second is to be free of sexual harassment.[9] First, Plaintiffs have alleged a deprivation of their right of privacy based on Mr. Dorrance's interrogation regarding their sexual activities and his coercing them to reveal details of these activities.[10]

In a factually similar case, the plaintiff was forced to reveal facts about her sexual history to an investigator who was probing the validity of the plaintiff's claims that a fellow employee at a state prison had sexually assaulted and molested her. *See*

---

**8.** This issue was first raised in Defendants' reply brief. Plaintiffs were given an opportunity to respond, which they did, in a twenty-page sur-reply.

**9.** At the conclusion of their § 1983 claim, Plaintiffs asserted that Defendant Dorrance created an intimidating, hostile and offensive environment and deprived Plaintiffs of the rights guaranteed to them under the First, Fourth, Fifth and Fourteenth Amendments. The Defendants response assumes that Plaintiffs alleged distinct violations of each of the First, Fourth, Fifth and Fourteenth Amendments, including a Free Exercise Clause violation arising from Defendant Dorrance's alleged encouragement of Plaintiff Jennings's drinking. *See* Br. Supp. Defs.' Mot. to Dismiss Pls.' Am. Compl. [Doc. # 64] at 4–5. However, Plaintiffs' invocations of the First,

Fourth, Fifth, and Fourteenth Amendments are only part of Plaintiffs' overarching assertions of privacy and sexual harassment rights, not separate constitutional claims. This reading is consistent with Plaintiffs' subsequent description of their Complaint as having alleged a sexual harassment hostile environment violation of the Fourteenth Amendment and a violation of privacy rights arising under the First, Fourth, Fifth, and Fourteenth Amendments. Pls.' Sur–Reply to Defs.' Mot. to Dismiss Pls.' First Am. Compl. [Doc. # 82] at 13–14.

**10.** Plaintiffs also allege that they were coerced into revealing the details of their teammates' sexual activities. Plaintiffs do not, however, have standing to assert any claims on behalf of their teammates.

*Eastwood v. Dep't of Corrections of State of Okla.,* 846 F.2d 627, 629–30 (10th Cir. 1988).

In finding that the plaintiff had alleged a violation of the First, Fourth, Fifth, and Fourteenth Amendment, the *Eastwood* court noted that "[w]hile the Constitution does not explicitly establish a right of privacy, the Supreme Court has recognized for nearly 100 years that a right of personal privacy does exist." *Id.* at 630 (citing *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Union Pacific Ry. Co. v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)). "As the Court noted in *Roe,* the 'roots' of the right of privacy have been found in the First Amendment, in the Fourth and Fifth Amendments, in the general penumbra of the Bill of Rights, and in the Fourteenth Amendment's concept of personal liberty and restriction upon state action." *Id.* at 630 n. 1 (citing *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe,* 410 U.S. at 153, 93 S.Ct. 705). The *Eastwood* court noted that two kinds of privacy interests are protected:

> the individual's interest in avoiding disclosure of personal matters and the interest in being independent when making certain kinds of personal decisions. The first interest protects the individual from governmental inquiry into matters in which it does not have a legitimate and proper interest. "The right to be left alone," the Supreme Court has said, is "the right most valued by civilized men."

*Id.* at 630–31 (citing *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (internal quotations omitted)).

The *Eastwood* court found that "[t]his constitutionally protected right is implicated when an individual is forced to disclose information regarding personal sexual matters." *Id.* at 631; *see also Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th Cir.1983) ("[T]he privacy of her sexual activities are within the zone protected by the Constitution."); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980) (information regarding one's body and health is a matter that the individual is ordinarily entitled to keep private).

Similarly, the Plaintiffs in this case allege that they were forced to answer questions about their sexual activities. Because such information is within the zone of privacy protected by the Constitution, Plaintiffs have alleged a violation of their Constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments against Mr. Dorrance. Plaintiffs have also adequately alleged that the Defendants deprived them of their constitutional right to be free from sexual harassment. The Supreme Court has held that "[t]he equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Applying this precedent "courts have held that intentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983," *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994) (citing *Pontarelli v. Stone,* 930 F.2d 104, 113–14 (1st Cir.1991); *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir.1986)) Courts apply the standards developed in Title VII litigation to similar litigation under § 1983. *See id.* (citing *Boutros v. Canton Reg'l Transit Auth.,* 997 F.2d 198, 202–03 (6th Cir.1993)).

 In order to prove a hostile environment sexual harassment action under

§ 1983, the plaintiff must prove that: (1) the subject conduct was unwelcome; (2) the conduct was based on the sex of the plaintiff; (3) the conduct was sufficiently severe or pervasive to create an abusive environment; (4) the conduct complained of was performed under color of state law; and (5) the conduct deprived her of rights, privileges, or immunities secured by the Constitution or Federal law. *See Kinman,* 171 F.3d at 611(8th Cir.1996).

The complaint alleges that Mr. Dorrance "intentionally and systematically subject[ed] Plaintiffs to inappropriate conduct and unwelcome sexual harassment and thereby created a hostile environment at UNC." (First Am. Compl. [Doc. # 54] ¶ 16.) In support of this allegation, the Plaintiffs allege that Mr. Dorrance used his position of authority as women's soccer coach to coerce the Plaintiffs into reporting their sexual activities to him (*id.* ¶¶ 17–18); that Mr. Dorrance made lewd and degrading comments (*id.* ¶ 19); that Mr. Dorrance made uninvited and inappropriate physical contact with Ms. Keller (*id.* ¶ 21); that Mr. Dorrance made uninvited sexual advances and sexually explicit comments towards Ms. Keller (*id.* ¶¶ 22–23, 79, 81); and that Mr. Dorrance made telephone calls and sent e-mail to Ms. Keller for the purpose of harassing her and monitoring her activities (*id.* ¶¶ 20, 25). Lastly, Plaintiffs allege that assistant coach Mr. Palladino also participated with Mr. Dorrance in uninvited sexual harassment (*id.* ¶ 28).

Defendants argue that these allegations are not sufficient because the Plaintiffs have not alleged that the harassment was directed at them because of their sex (Br. Supp. Defs.' Mot. to Dismiss Pls.' Am. Compl. [Doc. # 64] at 8), and that the conduct was not sufficiently severe or pervasive to alter the conditions of their environment and create an abusive environment (Defs.' Reply to Pls.' Resp. to Defs.'

Mot. to Dismiss Am. Compl. [Doc. # 72] at 3). At this stage of the proceedings, the Defendants have received fair notice of the nature of the claims against them. Further, as the Fourth Circuit has acknowledged, whether "harassment [is] sufficiently severe or pervasive is quintessentially a question of fact." *Beardsley,* 30 F.3d at 530 (quoting *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990) (en banc)).

b.

Since Plaintiffs have adequately alleged deprivations of their constitutional rights it must be determined if those rights were "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts in the Fourth Circuit determine whether a right was clearly established by reviewing the decisions of the Supreme Court, Fourth Circuit Court of Appeals, and highest court of the state in which the case arose. *Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir.1999) (also observing that cases from other circuits ordinarily do not affect what rights are considered clearly established within the Fourth Circuit).

In *Anderson v. Creighton,* the Supreme Court explained the level of specificity with which these prior decisions must have addressed the alleged conduct in order for a court to find that a right was clearly established at the time of the defendant's alleged violation:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the

light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted); *see also Hope v. Pelzer,* 536 U.S. 730, ——— ———, 122 S.Ct. 2508, 2515–16, 153 L.Ed.2d 666 (2002) (explaining that officials can still be on notice that their conduct violates established law even in novel factual circumstances ... the salient question ... is whether the state of the law [at the time of the alleged misconduct] gave [officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional).

Defendants must show that even assuming the truth of all Plaintiffs' factual allegations,[11] qualified immunity is nonetheless clear on the face of Plaintiffs' Complaint. *McVey v. Stacy,* 157 F.3d 271, 276 (4th Cir.1998) (quoting *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)); *McWaters v. Rick,* 195 F.Supp.2d 781, 789 (E.D.Va. 2002). Plaintiffs' allegations of sexual harassment by Defendant Dorrance are such that Plaintiffs could prove some set of facts consistent with their allegations under which Defendant Dorrance engaged in misconduct that was clearly established as unconstitutional at the time of the alleged conduct. Since Plaintiffs allege that Defendant Palladino joined Defendant Dorrance in this harassment conduct, the clearly established analysis for Defendant Dorrance's alleged sexual harassment violations also applies to Defendant Palladino's claim of qualified immunity.

 The equal protection component of the Due Process Clause confers a federal constitutional right to be free from gender discrimination. *Davis v. Passman,* 442 U.S. 228, 235, 99 S.Ct. 2264, 60 L.Ed.2d

846 (1979). Sexual harassment constitutes unconstitutional gender discrimination. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex."). The constitutional prohibition on sexual harassment in employment contexts also exists in educational contexts. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("We believe the same rule should apply when a teacher sexually harasses and abuses a student [as when a supervisor sexually harasses a subordinate].")

Although determinations of sexual harassment are necessarily fact specific, Defendants Dorrance and Palladino have not shown that on the face of Plaintiffs' Complaint their alleged misconduct was distinct from the kinds of behavior clearly established as unconstitutional sexual harassment. *See, e.g., Beardsley v. Webb,* 30 F.3d 524, 530–31 (4th Cir.1994) (acknowledging that sexual harassment is a question of fact but holding in affirming a denial of qualified immunity, that "[n]o male officer could reasonably have thought in 1992 that it was not sexual harassment to announce that it was his turn to make out with a women who was subject to his command"). Defendants Dorrance and Palladino are, therefore, not entitled to a Rule 12(b)(6) dismissal of Plaintiffs' sexual harassment claims on the basis of a qualified immunity defense. *See Trulock v. Freeh,* 275 F.3d 391, 406 (4th Cir.2001) (holding a Rule 12(b)(6) dismissal inappropriate where defendants "have done nothing more than offer their bald assertions

---

**11.** Defendants' factual contentions that Defendant Dorrance did nothing more than make innocent contact in a team huddle and express a coach's legitimate concern about

pre-game partying may well be persuasive at a later state of the proceedings but are irrelevant under the standard for reviewing a Rule 12(b)(6) motion.

that they are entitled to qualified immunity").

In regard to the qualified immunity claims of Defendants Hooker, Ehringhaus, Baddour, Miller, and Swofford, supervisory liability was clearly established under § 1983 at the time of their alleged conduct. The Fourth Circuit Court of Appeals observed that "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw,* 13 F.3d at 798 (citing *Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984); *Orpiano v. Johnson,* 632 F.2d 1096 (4th Cir.1980); *Withers v. Levine,* 615 F.2d 158 (4th Cir.1980)). The "certain circumstances" in which supervisors were liable were those where (1) the supervisors had knowledge that a subordinate was engaged in conduct posing an unreasonable risk of constitutional injury; (2) their response was so inadequate as to show deliberate indifference; and (3) their inaction was an affirmative cause of the plaintiff's constitutional injury. *Id.* at 799.

Defendants have not demonstrated that the allegations in the complaint show their alleged response to have been outside the established rule of supervisory liability under § 1983. Defendants Hooker, Ehringhaus, Baddour, Miller, and Swofford have not, therefore, established their qualified immunity defense at this stage in the proceedings.

 Defendant Dorrance has failed to show that Plaintiffs' cannot prove a set of facts regarding unconstitutionality of his inquires into their sex lives. The Supreme Court held that "[i]f the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted government intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *see also Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (recognizing as a privacy right the individual interest in avoiding disclosure of personal matters); *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (noting the existence of a right of personal privacy ... under the Constitution). The Fourth Circuit Court of Appeals observed that absent a showing of compelling government interest in disclosure, "private information in which an individual has a reasonable expectation of confidentiality is protected by one's constitutional right of privacy." *Walls v. City of Petersburg,* 895 F.2d 188, 192–93 (1990) (citing with approval *Shuman v. City of Philadelphia,* 470 F.Supp. 449 (E.D.Pa. 1979), (court held inquiry into an off-duty affair violated the right to privacy absent a showing that the affair was impacting job performance)).

Therefore, prior to August 25, 1995, a constitutional right to privacy was clearly established with respect to private, sexual activities in which the government had not shown a compelling disclosure interest. Defendant Dorrance is not entitled to a finding of qualified immunity at this stage in the proceedings.

Since the Plaintiffs' allegations are consistent with the violation of constitutional rights that were clearly established at the time of Defendants' alleged misconduct, the final step in the qualified immunity analysis is to determine whether a reasonable official would have understood that the alleged misconduct violated those rights. *E.g., Trulock,* 275 F.3d at 400. However, if the analysis reaches this stage, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727 (1982). Defendants have pointed to nothing in Plaintiffs' alle-

gations indicating that Defendants should not reasonably have known the relevant legal standards and cannot, therefore, sustain their qualified immunity defense at this stage. *See id.*

To summarize, Plaintiffs' § 1983 claims against UNC and the individual defendants in their official capacities must be dismissed. Nonetheless, Plaintiffs' claims against Mr. Dorrance, Mr. Palladino, Chancellor Hooker's estate, Ms. Ehringhaus, Mr. Swofford, Mr. Baddour, and Ms. Miller in their personal capacities survive. Furthermore, no Defendant is entitled to qualified immunity at this time.

### III.

■ Second, Defendants move to dismiss the claims brought under Title IX.[12] Courts have generally held that only the funding recipient can be liable under Title IX. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640–41, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611(8th Cir. 1999); *Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014, 1018 (7th Cir.1997); *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1012 (5th Cir.1996); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988). Considering these cases and others, the Plaintiffs have conceded that only UNC is a proper party Defendant under the Title IX claim. The Title IX claims against the individual Defendants are, therefore, dismissed.

■ Whether the Title IX claim against UNC should likewise be dismissed requires a more extensive discussion. The elements in a Title IX claim are: (1) that the plaintiff is a member of a protected group; (2) that the plaintiff has been subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe so as to create an abusive education environment; (5) that the educational institution had actual knowledge of the harassment; and (6) that the educational institution was deliberately indifferent to the abusive conditions. *See Davis*, 526 U.S. at 640–41, 119 S.Ct. 1661.

■ UNC contends that the claim should be dismissed because the Plaintiffs never complained to officials at UNC that Mr. Dorrance was sexually harassing them.[13] Specifically, UNC argues that Plaintiffs never reported any sexual harassment to UNC and that the "factual allegations state *only* that 'complaints of Dorrance's inappropriate and harassing conduct'—*not sexually harassing conduct*—were reported to UNC–CH." (Br. Supp. Defs.' Mot. to Dismiss Pls.' Am. Compl. [Doc. # 65] at 11 (quoting First Am. Compl. ¶¶ 40, 41, 43, 45, 48) (emphasis in original.)) First, Plaintiffs allege that "[o]n numerous occasions between 1996 and the present, complaints of Dorrance's inappropriate and harassing conduct were made on behalf of Plaintiffs to Hooker, Ehringhaus, Baddour, Miller, and Swofford." (First Am. Compl. ¶ 40.) Under *Davis*, the educational institution must have actual knowledge of the harassment, *see Davis*, 526 U.S. at 640–41, 119 S.Ct. 1661, but there is no requirement that the purported victims report the harassment directly.

---

**12.** Title IX provides in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

**13.** In support of these arguments, UNC cites to various affidavits. In accordance with this Court's order of September 7, 1999, these affidavits will not be considered.

Second, as the Defendants emphasize, the complaint alleges that inappropriate and harassing conduct was reported. At this stage in the litigation, the fact that Plaintiffs alleged "harassing conduct," rather than "sexually harassing conduct" is not a basis for dismissing this claim. Construing the complaint in favor of the Plaintiffs, it can be inferred that Mr. Dorrance's alleged "inappropriate and harassing" conduct includes his alleged uninvited sexual harassment sufficiently pled in the complaint. Viewing the complaint in this light serves substantial justice and avoids an overly technical dismissal of the claim. When reading the complaint in full, it is not clear that Plaintiffs never complained of "sexual" harassment to UNC officials.

UNC next contends that the claim should be dismissed because its response was not clearly unreasonable. In essence, UNC argues that no notice of the alleged harassment was given until after the Plaintiffs were no longer on the soccer team, and therefore the notice was received too late for UNC to demonstrate indifference. When notice was received, and in what manner, is an issue that cannot be resolved at this stage. Plaintiffs have alleged that Chancellor Hooker, Ms. Ehringhaus, Mr. Baddour, Ms. Miller, and Mr. Swofford received numerous complaints about Mr. Dorrance on their behalf, but that UNC failed to intervene or prohibit his actions. Such allegations are sufficient to state a claim. In the only case cited by the Defendants on this issue, *Burtner v. Hiram College*, 9 F.Supp.2d 852, 857 (N.D.Ohio 1998), the court was deciding a summary judgment motion and affidavits and other evidence were available from which the court could make these determinations. Once evidence is available at a later stage in this proceeding, it may be found that UNC's response was not "clearly unreasonable," but such a finding cannot be made based on the Plaintiffs' complaint alone.

UNC next contends that the claim should be dismissed because the Plaintiffs have not alleged severe, pervasive, and objectively offensive conduct. The Plaintiffs, however, have alleged that Mr. Dorrance used his position of authority as women's coach to coerce the Plaintiffs into reporting to him on their sexual activities and those of the other team members (First Am. Compl. ¶¶ 17, 18), repeatedly made lewd and degrading comments about other team members in the Plaintiffs' presence (*id.* ¶ 19), repeatedly made uninvited and inappropriate physical contact with Ms. Keller (*id.* ¶ 20), made uninvited sexual advances towards Ms. Keller and uninvited sexually explicit comments to her (*id.* ¶¶ 22, 23, 28, 79, 81), and repeatedly telephoned and e-mailed Ms. Keller for the purpose of harassing her and monitoring her activities (*id.* ¶¶ 20, 25). As before, at a later stage of this litigation it may be determined that this behavior did not occur or, if it did, that it does not rise to the level of severe, pervasive, and objectively unreasonable conduct. Should this be the case, then this claim may be dismissed at such later stage if the Plaintiffs fail to offer admissible evidence from which a reasonable fact finder could find that element of the prima facie case to be satisfied. However, such a determination cannot be made at this stage.

Finally, UNC contends that the Plaintiffs have not alleged that the actions of UNC deprived them of an educational opportunity or benefit. In support of this argument, UNC notes that neither Plaintiff has alleged that the actions impaired their performance on the field or in the classroom, and neither Plaintiff withdrew from the soccer team. The Plaintiffs have alleged, however, that Mr. "Dorrance's conduct directly and unreasonably interfered with Plaintiffs' education and participation in the women's soccer program at

UNC." (*Id.* ¶ 47.) Interfering with a student's education and participation in sports [14] may deprive a student of an educational opportunity or benefit in violation of Title IX. Further, Plaintiff alleges that in retaliation for the complaints made against him, Mr. Dorrance released Ms. Jennings from the soccer team in 1998. (First Am. Compl. [Doc. # 54] ¶ 43.) Such action, if proven, deprived Ms. Jennings of playing soccer, and therefore, is sufficient to state a claim.[15] Overall, the allegations of both Plaintiffs comply with the notice pleading requirements of the Federal Rules of Civil Procedure and are sufficient to survive a motion to dismiss under Rule 12(b)(6).

For the reasons stated, Plaintiffs' allegations are sufficient to state a claim under Title IX against UNC.

### IV.

█ Third, UNC and Mr. Dorrance move to dismiss the state-law claims filed against them on the basis that the Eleventh Amendment bars these claims.[16] Plaintiffs contend that Defendants have waived this immunity, and therefore granted consent to be sued, by asking this Court to exercise supplemental jurisdiction over the state-law claims. (Pls.' Resp. to Defs.' Mot. to Dismiss Pls.' First Am. Compl. [Doc. # 71] at 15.) In their brief, Defendants argue that "[t]he Eleventh Amendment bars [the state-law] claims against

UNC–CH and against Dorrance in his official capacity." (Br. Supp. Defs.' Mot. to Dismiss Pls.' Am. Compl. [Doc. # 64] at 15.) After this argument, Defendants then argue that "[t]he Court should exercise supplemental jurisdiction over the state claims," with a footnote stating, "[o]f course, all of the state law claims against UNC–CH and against Dorrance in his official capacity are barred by both Eleventh Amendment and sovereign immunity." (*Id.* at 16 & n. 13.) Rather than waiving Eleventh Amendment immunity, the Defendants are protecting themselves by arguing in the alternative that if the Court finds that the Eleventh Amendment does not bar the state-law claims or that some of the allegations are against Mr. Dorrance in his individual capacity, then the Court should exercise supplemental jurisdiction over the state-law claims. Arguments in the alternative are allowed, and even encouraged. *See* Fed.R.Civ.P. 8(e)(2). Therefore, Defendants have not consented to be sued in federal court. For these reasons, this Court does not have jurisdiction over the state-law claims against UNC [17] or against Mr. Dorrance in his official capacity.[18]

### V.

It must next be determined whether state-law claims remain against Mr. Dorrance in his individual capacity. Mr. Dorrance argues that all of the allegations

---

**14.** *See* 34 C.F.R. § 106.41(a) (publishing regulations implementing Title IX, concluding that "[n]o person shall, on the basis of sex, be excluded from participation in .. or otherwise discriminated against in any interscholastic, intercollegiate ... athletics offered by a recipient"); *Kelley v. Board of Tr.*, 35 F.3d 265, 268 (7th Cir.1994) (discussing § 106.41(c)); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650–51, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (providing example of peer-on-peer sexual harassment in violation of Title IX, where, as a result of peer sexual

harassment, student is prevented from using an "athletic field").

**15.** *See id.*

**16.** *See supra* part II.A for a discussion of Eleventh Amendment immunity.

**17.** These claims are for fraud, negligent retention, and invasion of privacy.

**18.** These claims are for intentional interference with contractual relations, assault, battery, fraud, and invasion of privacy.

relate to acts that he took in his official capacity, rather than his individual capacity. As such, Mr. Dorrance maintains that no state-law claims remain against him. At this stage of the proceedings, it is impossible to determine from the allegations in the complaint whether Mr. Dorrance acted solely within the scope of his official capacity. At a later stage of the proceedings when evidence has been developed, such a finding may be possible, and the claims may be dismissed at that stage of the proceedings. However, such a determination cannot be made at this stage.

In addition to arguing that all of the allegations are about acts that he took in his official capacity, Mr. Dorrance seeks dismissal of the state-law claims on claim-specific grounds.

### A.

■ Defendant Dorrance has moved to dismiss Ms. Keller's claim for intentional interference with a business expectancy on the basis that North Carolina does not recognize this cause of action. (Br. Supp. Defs.' Mot. to Dismiss Pls.' Am. Compl. [Doc. # 64] at 17.) However, "[t]he complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Proce-*

*dure* § 1357 (1990); *see also Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974).

Because the facts alleged in the complaint set forth a theory under which relief is available, this Court need not presently decide whether North Carolina recognizes a cause of action for intentional interference with a business expectancy.[19] Under North Carolina law, the elements of a tortuous interference with contract claim are:

> First, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. Second, that the outsider had knowledge of the plaintiff's contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused the plaintiff actual damages.

*Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 220, 367 S.E.2d 647, 649–50 (1988).

Ms. Keller has alleged that she was under contract with the United States Soccer Federation and an active participant on the women's national soccer team, (First Am. Compl. [Doc. # 54] ¶ 54); that Mr. Dorrance had knowledge of her contract, (*id.* ¶ 55); that Mr. Dorrance induced the Federation and its coach to exclude her from participation on the national team, (*id.* ¶ 58); that Mr.

19. *See generally Noell v. Winston,* 51 N.C.App. 455, 457, 276 S.E.2d 766, 768 (1981) ("[W]e have been unable to find any authority in this State recognizing [a cause of action for interference with a business relationship or expectancy of an attorney]"). *But see Dalton v. Camp,* 138 N.C.App. 201, 531 S.E.2d 258, 265 (2000) (recognizing action for tortious interference with prospective advantage); *Market Am., Inc. v. Rossi,* No. 1:97CV00891, 1999 WL 1939247, *18 (M.D.N.C. April 15, 1999)

(stating that North Carolina recognizes the tort of interference with business relations or expectancy, stating the elements, and citing *McDonald v. Scarboro,* 91 N.C.App. 13, 370 S.E.2d 680 (1988)); 45 Am.Jur.2d *Interference* § 48 (1999); *Cameron v. New Hanover Mem'l Hosp., Inc.,* 58 N.C.App. 414, 437, 293 S.E.2d 901, 915 (1982) (quoting *Smith v. Ford Motor Co.,* 289 N.C. 71, 94, 221 S.E.2d 282, 296 (1976)).

Dorrance's conduct was deliberate and willful and was done with the reasonable certainty that Ms. Keller would be financially injured, (*id.* ¶ 76); and that Ms. Keller was excluded from participation in the Women's World Cup and deprived of the financial and personal opportunities and rewards of membership on the 1999 Women's World Cup Championship Team as a result of Mr. Dorrance's conduct. (*Id.* ¶ 75). Ms. Keller has, therefore, stated a claim for tortuous interference with contractual relations.

### B.

 Plaintiff Keller has alleged that she was assaulted by Mr. Dorrance on two different occasions. The first incident occurred in October 1996, (First Am. Compl. [Doc. # 54] ¶¶ 23, 79). The second assault occurred in 1998(*id.*). The complaint in this case was filed August 25, 1998. The statute of limitations for a claim of assault is one year. *See* N.C. Gen.Stat. § 1–54(3). Accordingly, the statute of limitations bars any claim for assault resulting from the events that occurred in October 1996.

 Whether a claim has been stated for assault is, therefore, limited to consideration of the incident alleged to have occurred in 1998. An assault requires the plaintiff's reasonable apprehension of an immediate harmful or offensive contact. *See Dickens v. Puryear,* 302 N.C. 437, 445–6, 276 S.E.2d 325, 331 (1981) ("The apprehension created must be one of imminent contact, as distinguished from any contact in the future. 'Imminent' does not mean immediate, in the sense of instantaneous contact. It means rather that there will be no significant delay." *Id.* at 302 N.C. at 445–46, 276 S.E.2d at 331 (quoting Restatement (Second) of Torts § 29(1) cmt. (1965)). While words alone may not constitute assault, words may render the actor liable if, in combination "with other acts or circumstances, they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person." *Id.* at 446, 276 S.E.2d 325 (quoting Restatement (Second) of Torts § 31)).

Ms. Keller's allegations are that Mr. Dorrance

coerced [Ms. Keller] into meeting with him at a local restaurant. While there, he made an uninvited romantic advance toward [Ms. Keller] and otherwise put her in reasonable apprehension of imminent harmful or offensive contact by Dorrance when he:

 a. Sat in close proximity to [Ms. Keller];

 b. Once again professed his affection for her;

 c. Made derogatory remarks about [Ms. Keller's] parents; and

 d. Blamed [Ms. Keller's] parents for keeping him and [Ms. Keller] apart.

(First Am. Compl. [Doc. # 54] ¶ 81.) Whether these facts are sufficient to state a claim for assault is a very close question. The Seventh Circuit noted in a case where sexual harassment had been alleged that,

Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Baskerville,* 50 F.3d at 430–31 (citations omitted).

When considering a 12(b)(6) motion, "[t]he issue is not whether a plaintiff will prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (noting that "on the face of the pleadings" the fact that "recovery is very remote and unlike-

ly" is "not the test"), *overruled by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court states that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

While a close question, it does not appear beyond doubt that Ms. Keller cannot prove a set of facts entitling her to relief. When she develops the facts of her case, it may become apparent that Mr. Dorrance sat in proximity to her, disparaged her parents, and professed his affections to her in such a way or manner as to create a reasonable apprehension of an immediate harmful and offensive contact. At the same time, future litigation may prove that this behavior did not occur, or if so did not rise to the level of an assault. Regardless, at this stage, Plaintiff's allegations satisfy pleading requirements to survive a 12(b)(6) motion to dismiss the assault charge.

### C.

Ms. Keller also brought a claim for battery against Mr. Dorrance. Mr. Dorrance originally moved to dismiss this claim on the basis that it was barred by the statute of limitations. However, this argument relied on documents that were extraneous to the pleadings. In an Order dated September 7, 1999, this Court said that it would not consider such documents in deciding the motion under Rule 12(b)(6). Accordingly, Defendant has withdrawn his motion to dismiss this claim.

### D.

 The sixth claim is brought against Mr. Dorrance and UNC [20] by Ms. Jennings for constructive fraud. Although "[c]on-

structive fraud differs from actual fraud in that the intent to deceive is not an essential element," Ms. Jennings must show that she was deceived by the misrepresentations of the defendants. *Jordan v. Crew,* 125 N.C.App. 712, 720, 482 S.E.2d 735, 739 (1997).

Ms. Jennings alleges that she was directed by Mr. Dorrance "to withdraw $400.00 from her bank account to purchase supplies for her teammates and for members of the opposing team," and that this "conduct was done with the intention of harassing, embarrassing and intimidating" Ms. Jennings. (First Am. Compl. [Doc. # 54] ¶¶ 91, 93.) These facts, assumed at this stage to be true, do not support a reasonable inference that Ms. Jennings was deceived by Mr. Dorrance's instructions to withdraw $400.00.

In the light most favorable to Ms. Jennings, Mr. Dorrance directed her to withdraw money from her account to purchase supplies for the team. At the time of this request, Ms. Jennings would have known that she was under no personal obligation to pay for team supplies, and nothing alleged in the Complaint suggests that Mr. Dorrance attempted to convince her otherwise. Since Ms. Jennings was never deceived by any misrepresentation of Mr. Dorrance, this "essential element" of constructive fraud is nonexistent, and the claim must be dismissed.

### E.

The seventh claim is brought against UNC for negligent retention. As discussed in part IV, the Eleventh Amendment bars this claim.

### F.

 The eighth claim is brought against UNC [21] and Mr. Dorrance for inva-

---

20. As discussed in part IV, the Eleventh Amendment bars this claim against UNC.

21. As discussed in part IV, the Eleventh Amendment bars this claim against UNC.

sion of privacy. A defendant is liable for invasion or intrusion of privacy if he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Miller v. Brooks*, 123 N.C.App. 20, 25–26, 472 S.E.2d 350, 354 (1996) (quoting *Smith v. Jack Eckerd Corp.*, 101 N.C.App. 566, 568, 400 S.E.2d 99, 100 (1991)). Examples of such intrusions include

> the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

*Restatement (Second) of Torts* § 652B cmt. b (1977).

> An illustration under this comment is
>
> A, a professional photographer, seeking to promote his business, telephones B, a lady of social prominence, every day for a month, insisting that she come to his studio and be photographed. The calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests to desist. A has invaded B's privacy. *Id.*, cmt. b, ill. 5.

Plaintiffs have alleged that Mr. Dorrance "constantly interrogate[d] the members of his team, including Plaintiffs, re-

garding their personal lives, including but not limited to their sexual activities," "constantly coerce[d] and intimidate[d] the members of his team, including Plaintiffs, to report to him, the sexual activities of their teammates," and "place[d] unwanted and uninvited telephone calls to [Ms. Keller] for the purpose of monitoring her activities." (First Am. Compl. [Doc. # 54] ¶¶ 103–05.) [22]

Defendants contend that these facts are not sufficient to establish that the intrusion would be highly offensive to a reasonable person. However, depending on the manner in which this conduct occurred and the frequency with which it occurred, such conduct could be highly offensive to a reasonable person. This determination cannot be made at this stage of the proceedings, and accordingly this claim cannot be dismissed.

### VI.

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The Defendants' motion to dismiss the claims brought under 42 U.S.C. § 1983 is GRANTED as to Defendant UNC and as to the individual Defendants acting in their official capacities. The motion to dismiss the § 1983 claims against Defendants in their personal capacities is DENIED as to Mr. Dorrance, Mr. Palladino (regarding the actual sexual harassment and inappropriate conduct alleged in the complaint), Chancellor Hooker's estate, Ms. Ehringhaus, Mr. Swofford, Mr. Baddour, and Ms. Miller. The motion to dismiss the § 1983 claims against the Defendants in

---

**22.** Defendants maintain that any of these allegations that occurred three years prior to the filing of the complaint are barred by the statute of limitations, codified as section 1–52(5) of the North Carolina General Statutes. Plaintiffs generally allege that from 1993 to the present, Mr. Dorrance interrogated Plain-

tiffs, regarding their personal lives, including their sexual activities. The specific dates or forms of these interrogations are unclear at this stage of the proceedings. Thus there is insufficient information at this stage to make a determination of what specific, if any, evidence should be barred.

their person capacities is GRANTED as to Mr. Ducar, Ms. Ducar, Mr. Prentice, and Mr. Palladino (regarding the failure to report the alleged misconduct). The motion to dismiss the claims brought under Title IX is GRANTED as to the individual Defendants and DENIED as to Defendant UNC. The motion to dismiss the state-law claims is GRANTED as to Defendant UNC and Mr. Dorrance acting in his official capacity. As for the state-law claims against Mr. Dorrance personally, the motion to dismiss the claim against him for intentional interference with Ms. Keller's contractual relationship is DENIED. The motion to dismiss the claim brought against Mr. Dorrance by Ms. Keller for assault is DENIED. The motion to dismiss the claim brought against Mr. Dorrance by Ms. Keller for battery is DENIED. The motion to dismiss the claim brought against Mr. Dorrance by Ms. Jennings for constructive fraud is GRANTED. The motion to dismiss the claim brought against Mr. Dorrance by both Plaintiffs for invasion of privacy is DENIED.

The following claims remain: the § 1983 claims brought by both Plaintiffs against Mr. Dorrance, Mr. Palladino, Chancellor Hooker's estate, Ms. Ehringhaus, Mr. Swofford, Mr. Baddour, and Ms. Miller in their personal capacity; the Title IX claims brought against UNC by both Plaintiffs; the state-law claim brought against Mr. Dorrance by Ms. Keller for intentional interference with a contractual relationship; the state-law claim brought against Mr. Dorrance by Ms. Keller for assault; the state-law claim brought against Mr. Dorrance by Ms. Keller for battery; and the state-law claim brought against Mr. Dorrance by both Plaintiffs for invasion of privacy.

## ORDER

This case is now before the Court on Defendants' Motion to Dismiss [Doc. # 44 and # 64], Plaintiffs' Motion to Lift Stay on Discovery [Doc. # 75], and Plaintiffs' Motion to Strike Section 1B of the Reply [Doc. # 73]. For the reasons set forth in a contemporaneously filed Memorandum Opinion, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motion to Lift Stay on Discovery is GRANTED. Plaintiffs' Motion to Strike Section 1B of the Reply is DENIED.

